Steven H. Newman, Esq.
Robert A. Abrams, Esq.
Katsky Korins LLP
605 Third Avenue
New York, New York 10158-0038
Telephone: (212) 953-6000
Fax: (212) 953-6899
E-Mail: snewman@katskykorins.com
E-Mail: rabrams@katskykorins.com

*Attorneys for St. Mark's Mixed Use LLC*

Hearing Date: March 2, 2022
At: 2:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re

    78-80 ST. MARKS PLACE, LLC,

                        Debtor.
-----------------------------------------------------------------x

Chapter 11

Case No. 21-12139 (MG)

## **DECLARATION OF VICKRAM JAMBU**

I, Vickram Jambu, hereby declare under penalty of perjury as follows:

1.     I am a Managing Director with Jones Lang Lasalle ("**JLL**"), am personally familiar with the facts and circumstances herein, and submit this declaration in support of the Objection of St. Mark's Mixed Use LLC (the "**Lender**") to (I) the motion by 78-80 St. Marks Place, LLC (the "**Debtor**") for the entry of an Order: (A) Authorizing Debtor to Obtain Superpriority Post-Petition Financing, (B) Granting Liens and Superpriority Claims, (C) Modifying the Automatic Stay; and (D) Granting Related Relief (ECF No. 14) (the "**Financing Motion**"); and (II) the Debtor's motion for the entry of an Order Approving the Use of Cash Collateral (ECF No. 15) (the "**Cash Collateral Motion**").

2. Unless otherwise stated in this declaration, the facts stated herein are based on my personal knowledge, information and belief.

3. I am a licensed real estate sales person in and by the State of New York with substantial experience in the marketing and sale of residential, commercial and mixed use real property, including property like the real property owned by the Debtor which is located at 78-80 St. Marks Place, New York, New York 10003 (the "**Real Property**"). I received an undergraduate degree from Pace University. I have approximately 10 years of experience in the real estate industry and have held brokerage and management roles at several real estate firms. For much of my career I have worked as a broker for multi-family and mixed-use real properties.

4. Since October, 2021, I have been a Managing Director at JLL and I focus on the seller side of real estate engagements. On the matters I handle, I supervise a group of 4 - 6 brokers on each project, depending on the complexity of the property. I am one of the individuals leading JLL's efforts to grow its upper middle market presence in the New York City metro area. From July 2018 to October 2021, I worked at Lee & Associates NYC ("**L&A**"), and during such time I was in charge of the Investment Sales Department at L&A's New York Office. L&A is independently owned, but is part of the Lee & Associates brand, a national brokerage firm with over 60 offices in North America and has over 1,000 brokers.

5. Over the course of my career I have personally been the lead broker in the sale of dozens of real properties in the New York City metro area, which sales aggregated approximately $900,000,000 in sales. I am a member of the Urban Land Institute ("**ULI**"), the oldest and largest network of cross disciplinary real estate and land use experts in the world, and I am part of the housing counsel of such organization for New York. I am also member of the Real Estate Council of The Carnegie Hall.

6. In April 2021, the Debtor retained L&A to market and sell the Real Property, and I was the lead broker in charge of the Debtor's engagement and relationship with L&A. Four (4) other real estate brokers worked on my team for this engagement and reported to me. In addition, at least four (4) non-brokers provided additional analyst, administrative and marketing support for the project.

7. On or about May 12, 2021 the Debtor authorized L&A to begin listing the Real Property for sale on May 15, 2021 at the listing price of $13,500,000. Prior to May 15, 2021, the Debtor and its principal, Lawrence Otway ("**Otway**"), provided me with information on the Real Property. As a result of having previously obtained such information, L&A began to robustly market the Real Property on or about May 17, 2021[1] at $13,500,000 to potential buyers.

8. As part of L&A's marketing process for the Real Property, L&A performed, among other things, the following:

   a. Collected and reviewed pertinent available data regarding the Real Property that was provided by the Debtor and Otway (and Otway's wife, Eugenie Otway) as well as additional information collected by L&A from on-line and other sources;

   b. Inspected and photographed the interior and exterior of the Real Property;

   c. Assembled marketing material and prepared a 19 page marketing brochure (the "**Brochure**") describing the Real Property. A copy of the Brochure is attached hereto as **Exhibit 1;** and

   d. Established a web-based, online data room (the "**Data Room**") containing available buyer diligence items.

9. During its engagement, L&A marketed the Real Property through the following means:

---

[1] As May 15, 2021 was a Saturday, we began to market on the next business day, May 17, 2021.

a. Made telephone calls and sent emails to hundreds of potential interested purchasers and to owners of neighboring properties and similar properties;

b. Sent email blasts of a flyer regarding the Real Property on multiple occasions to over three thousand (3,000) investors on the proprietary list of potential investors maintained by L&A and other marketing tools such as Crexi, and Propertyidx;

c. Listed the Real Property on the L&A's website: leeassociatesnyc.com. I also caused the Real Property to be listed for sale on loopnet.com, Crexi.com and Propertyidx.com – online marketplaces for commercial property which primarily provide commercial property listings, such as the Real Property, for sale;

d. The marketing efforts were directed at a vast number of investors, including without limitation, family offices, syndicators, local, regional, national and international investors, and other investors;

e. L&A reached out to interested parties, disseminated marketing information, and answered questions;

f. As a result of these efforts, a total of more than 13 prospective purchasers executed non-disclosure agreements;

g. Walked the Real Property with more than 7 prospective purchasers; and

h. Communicated updates to Otway and his wife, Eugenie Otway ("**EO**").

10. Based on my experience, I believe that (i) that in May 2021 the Real Property was worth in the mid $9 million range, assuming the owner-occupied portions of the property were delivered vacant, and (ii) that the initial asking price set by the Debtor was overstated and the Real Property should have been listed at an amount substantially lower than that what the Debtor authorized. I repeatedly advised the Debtor that the asking price of $13,500,000 was overstated. The Debtor made clear to me that it did not want to sell the Real Property and was therefore setting

a price which would dissuade any interest. After L&A failed to receive any offers, I recommended to the Debtor that in order to ever effectuate interest in the Real Property, the asking price should be reduced to $10,000,000 in order to obtain a willing buyer.

11. However, the Debtor, by Otway and EO, insisted on continuing to list the Real Property at $13,500,000. Ultimately, on June 17, 2021, Debtor authorized the asking price be reduced to $11,500,000.

12. Despite our active and robust marketing of the Real Property, even at the reduced asking price, during L&A's engagement, L&A received only one offer for the Real Property and that offer was for $9,300,000. I promptly conveyed that offer to the Debtor. However, the Debtor never responded with instructions on how L&A should respond and, as a result, no counteroffer was ever communicated to the potential purchaser.

13. In August 2021, the Debtor abruptly instructed L&A to stop marketing the Real Property entirely.

14. Based on my marketing efforts and extensive familiarity with the market, I believe that at the time I was marketing the Real Property its value was in the mid $9 million range.

15. Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge information and belief.

Dated: New York, New York
February 10, 2022

_____
**VICKRAM JAMBU**