Steven H. Newman, Esq.
Robert A. Abrams, Esq.
Katsky Korins LLP
605 Third Avenue
New York, New York 10158-0038
Telephone: (212) 953-6000
Fax: (212) 953-6899
E-Mail: snewman@katskykorins.com
E-Mail: rabrams@katskykorins.com

*Attorneys for St. Mark's Mixed Use LLC*

Hearing Date: April 27, 2022

At: 11:00 a.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re

       78-80 ST. MARK'S PLACE, LLC,

               Debtor.

-------------------------------------------------------------------x

Chapter 11

Case No. 21-12139 (MG)

## <u>NOTICE OF MOTION</u>

    **PLEASE TAKE NOTICE**, that upon the annexed motion of St. Mark's Mixed Use LLC, and upon the Declaration of Jason Leibowitz dated April 4, 2022 in support of the motion, the undersigned will move this Court for an order granting the *Motion for an Order: (i) (A) Converting the Chapter 11 case of 78-80 St. Marks Place, LLC (the "**LLC Debtor**") to a Case Under Chapter 7 Pursuant to 11 U.S.C. §§ 1112(b)(1) and 1112(b)(4)(A), (B), and (I), or, Alternatively (B) Appointing a Chapter 11 Trustee for the LLC Debtor Pursuant to 11 U.S.C. §§ 1104(a)(1) and (a)(2), and (ii) Granting the Lender Related Relief* (the "**Motion**"), at a hearing before the Honorable Martin Glenn, Chief United States Bankruptcy Judge, to be held by Zoom for Government on April 27, 2022 at 11:00 a.m. (the "**Hearing**").

**PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the relief sought in the Motion must (a) be made in writing, (b) state with particularity the grounds therefor, (c) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (d) filed electronically with the United States Bankruptcy Court for the Southern District of New York, and (e) served upon: (i) Katsky Korins LLP, 605 Third Avenue, 17th Floor, New York, New York 10158, Attn: Steven H. Newman , Esq. Esq., (ii) Mintz & Gold LLP, 600 Third Avenue, 25th Floor, New York, New York 10016, Attn: Andrew Gottesman, Esq., counsel for the Debtor, (iii) The Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Room 1006, New York, New York 10014, Attn: Shannon Scott, Esq., and (iv) all other parties that have requested notice pursuant to Bankruptcy Rule 2002, so as to be received no later than April 20, 2022 at 4:00 p.m. (New York Time) (the "**Objection Deadline**").

**PLEASE TAKE FURTHER NOTICE** that parties wishing to participate in the Hearing must register their appearance by 4:00 p.m. on the business day prior to the Hearing by utilizing the Court's eCourt Appearance tool located at https://www.nysb.uscourts.gov/ecourt-appearances. Complete instructions on how to participate in the Hearing may be found on the Court's website at https://www.nysb.uscourts.gov/zoom-video-hearing-guide or at Judge Glenn's chambers website at https://www.nysb.uscourts.gov/content/judge-martin-glenn under the "Zoom Hearings" and "eCourt Appearances" tabs.

**PLEASE TAKE FURTHER NOTICE** that (i) the Hearing may be adjourned from time to time without further notice other than oral announcement at the Hearing(s) or written posting on the Court's calendar for said date, and/or written entry on the Court's ECF docket; and (ii) if

no objections are timely filed and served as set forth above, the Bankruptcy Court may deem any opposition waived and enter an order granting the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and all pleadings and other papers filed in this chapter 11 case may be obtained by (i) accessing the Court's website at [www.nysb.uscourts.gov](www.nysb.uscourts.gov), or (ii) contacting the Office of the Clerk of the Court at One Bowling Green, New York, New York 10004 or contacting counsel to the Debtor. Note that a PACER password is needed to access documents on the Court's website.

Dated: New York, New York
      April 4, 2022

Respectfully submitted,

**KATSKY KORINS LLP**

By: /s/ Steven H. Newman
    Steven H. Newman, Esq.
    Robert A. Abrams, Esq.
605 Third Avenue
New York, New York 10158
Telephone: (212) 953-6000

*Attorneys for St. Mark's Mixed Use LLC*

Steven H. Newman, Esq.
Robert A. Abrams, Esq.
Katsky Korins LLP
605 Third Avenue
New York, New York 10158-0038
Telephone: (212) 953-6000
Fax: (212) 953-6899
E-Mail: snewman@katskykorins.com
E-Mail: rabrams@katskykorins.com
*Attorneys for St. Mark's Mixed Use LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

In re

      78-80 ST. MARK'S PLACE, LLC,

              Debtor.

------------------------------------------------------------------------x

Chapter 11

Case No. 21-12139 (MG)

**MOTION FOR AN ORDER: (I) (A) CONVERTING THIS CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7 PURSUANT TO 11 U.S.C. §§ 1112(b)(1) AND 1112(b)(4)(A), (B), AND (I), OR, ALTERNATIVELY, (B) APPOINTING A CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. §§ 1104(a)(1) AND (a)(2); AND (II) GRANTING RELATED RELIEF**

St. Mark's Mixed Use LLC ("**Lender**"), by its undersigned counsel, respectfully submits

this motion for the entry of an Order: (i) (A) converting the Chapter 11 case of 78-80 St. Marks

Place, LLC (the "**LLC Debtor**") to a case under Chapter 7 pursuant to 11 U.S.C. §§ 1112(b)(1)

and 1112(b)(4)(A), (B), and (I), or, alternatively (B) appointing a Chapter 11 trustee for the LLC

Debtor pursuant to 11 U.S.C. §§ 1104(a)(1) and (a)(2), and (ii) granting the Lender related relief

(the "**Motion**").[1]

---

[1] Lawrence V. Otway (the "**Individual Debtor**" or "**Otway**"), the LLC Debtor's sole member, also filed a Chapter 11 case in this Court (Case No. 21-12140 (MG)). The LLC Debtor and the Individual Debtor are sometimes collectively referred to herein as the "**Debtors.**"

## STATEMENT OF FACTS

1.       The facts are set forth in the accompanying Declaration of Jason Leibowitz, dated April 4, 2022 (the "**Leibowitz Declaration**").[2]

## PRELIMINARY STATEMENT

2.       The undisputed facts of this case demonstrate that cause exists to convert the LLC Debtor's single asset real estate case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code. Specifically, cause to convert this case exists because: (i) there is a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation (*see* § 1112(b)(4)(A)), (ii) the LLC Debtor is unable to pay and, in fact, has *admittedly* failed to pay post-petition taxes (*see* § 1112(b)(4)(I)), and (iii) there is gross mismanagement of the LLC Debtor's estate. *See* § 1112(b)(4)(B).

3.       Alternatively, the Court should appoint a Chapter 11 trustee pursuant to § 1104(a)(1) and (2) to protect creditors from the Individual Creditor's mismanagement of the LLC Debtor's estate to further the LLC Debtor's self-interests and to curb the snowballing amount of debt that the LLC Debtor has permitted to occur since the Loan matured on December 1, 2020. Indeed, the Lender no longer has any trust or confidence in the LLC Debtor's management or its ability to rehabilitate itself. Unlike the LLC Debtor, a Chapter 11 operating trustee will not sit idle and allow further debt to accrue or permit the Individual Debtor and his many affiliates to continue to use the LLC Debtor's Real Property rent free. Rather, a Chapter 11 operating trustee will recognize the economic realities of the LLC Debtor's financial condition

---

[2] All capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Leibowitz Declaration.

and likely conduct a sale of the Real Property to realize sufficient funds to pay creditors under a plan before all equity in the Real Property has completely evaporated.

4.     There is no credible dispute that there has been a substantial or continuing loss or diminution of value of the estate. As set forth in both the Forbearance Agreement and the State Court's Consent Order, the Debtors' obligations to Lender under the Loan fully matured on December 1, 2020, the Debtors, *inter alia*, admitted to the amounts owed, waived all defenses thereto and admitted that interest is accruing on Lender's claims at 24% per annum. Indeed, in the Forbearance Agreement, the Debtors admitted that, as of December 31, 2020, they were indebted to the Lender in the sum of $6,245,653,65. *See*, **Exhibit 14,**[3] p. 4. Then, after the Debtors failed to pay a dime to Lender (or any property taxes) since the Maturity Date, the Debtors further admitted in the Consent Order that, as of November 29, 2021, they were indebted to the Lender in the sum of at least $7,980,855.65. *See*, **Exhibit 20**, p. 5. And pursuant to the Term Sheet submitted to this Court, the Debtors acknowledged that as of March 2, 2022, they were indebted to Lender in the amount of at least $8,632,144.78.[4] *See*, **Exhibit 1**.[5] In other words, because the LLC Debtor failed to refinance or sell the Real Property in accordance with each of their agreements, the LLC Debtor has admitted that its equity has plummeted by at least $2,386,491 (*i.e.*, $8,632,144 - $6,245,653), between December 31, 2020 and March 2, 2022, and that interest (in excess of $138,000 a month) and legal fees continue to accrue.  Because the LLC Debtor and its sole manager, the Individual Debtor, continue to put blinders on and refuse to

---

[3] Unless otherwise noted, references herein to "Exhibits" shall refer to the Exhibits attached to the Leibowitz Declaration.

[4] The LLC Debtor acknowledged in the Term Sheet that if Lender's actual attorneys' fees and expenses for the period between February 1, 2022 through March 2, 2022 were higher than the estimate of fees and expenses for such period, that such sums would be added to Lender's claim, together with accruing interest, attorneys' fees and other charges from and after March 2, 2022.

[5] The Term Sheet is annexed to the LLC Debtor's February 28, 2022 Letter to the Court.

recognize its economic reality that the LLC Debtor has insufficient revenue and that default rate interest and other charges, including attorneys' fees and expenses, continue to accrue, an independent trustee must be promptly installed to provide stewardship and prevent further depletion of any remaining equity.

5. Moreover, the continued accrual of substantial losses to the LLC Debtor's estate are further evidenced by the LLC Debtor's admissions in its own bankruptcy filings. For example, it represented in its Local Rule 1007-2 Affidavit (the "**12/29/21 Otway Declaration**") that due to COVID-19, the LLC Debtor's tenants -- affiliated entities of the LLC Debtor -- shutdown their respective businesses in 2020.[6] **Exhibit 2**, ¶¶ 23-24; ECF No. 2. Further, although the LLC Debtor represented to the Court in a Declaration of Lawrence Otway dated January 19, 2022 (the "**1/19/22 Otway Declaration**") that it "expects to collect rent in the amount of approximately $8,950 each month going forward" (*see*, **Exhibit 22**, ¶ 11; ECF No. 15-1, ¶ 11), the LLC Debtor's January 2022 Operating Report reflects that the LLC Debtor actually had zero rent collections in January 2022.  Also, as the date hereof, (i) the LLC Debtor failed to file its February 2022 operating report; and (ii) the Individual Debtor has failed to file any operating reports, in violation of the U.S. Trustee's operating guidelines.

6. On the expense side, the LLC Debtor has admitted that it "will accrue monthly administrative expenses of approximately $27,754.20, not including administrative costs and expenses (including legal fees), which will accrue throughout the course of its chapter 11 case." (**Exhibit 22**, at ¶8). Thus, even if the LLC Debtor collects a mere $8,950 in rent per month as it asserted it would, by the LLC Debtor's own admission, the LLC Debtor has projected post-

---

[6] Furthermore, the LLC Debtor's Statement of Financial Affairs reflects that the LLC Debtor had no revenues for 2021. *See* ECF No. 1.

petition losses of $18,804 per month (*i.e.*, losses of $225,648 per year). Making matters worse, the LLC Debtor's actual losses are even greater than such amount.

7. For example, since the LLC Debtor collected no rent for January 2022, the LLC Debtor's monthly loss for January was not merely $18,804, but $27,754 (which translates to a loss of $333,048 per year).

8. Furthermore, the LLC Debtor's claim that its expenses are only $27,754 is grossly understated because it completely omits the amount of interest accruing on the Loan owed to Lender. According to the 12/29/21 Otway Declaration, interest on Lender's Loan accrues interest at $4,600 each day. **<u>Exhibit 2</u>**, ¶ 34; ECF No. 2, ¶ 34. Using the LLC Debtor's estimate, monthly interest is $138,000 (*i.e.,* $4,600 x 30 days), or $1,656,000 per year. In other words, the LLC Debtor's monthly expenses are not just the mere $27,754; rather, they are $165,754 (*i.e.*, $27,754 + $138,000). Thus, assuming the LLC Debtor actually collects monthly rental income of $8,950 (which it failed to do in January 2022), <u>the LLC Debtor actually has actual losses of at least $156,804[7] per month (*i.e.* $165,754 - $8,950)</u>.

9. Thus, there can be no credible dispute that the LLC Debtor is -- in fact --incurring substantial and continuing losses, which losses are resulting in a substantial diminution of value to the estate.

10. Further, the LLC Debtor has no reasonable likelihood of rehabilitation. For more than a year prior to the Petition Date, the Debtors engaged in stalling tactics and repeatedly represented to the Lender that a refinancing of the LLC Debtor's indebtedness to Lender was imminently scheduled to close. At least 6 scheduled closings were cancelled.[8] Notably, in an

---

[7] Such amount does not include the accrual of legal fees and expenses owed to Lender or the LLC Debtor's own counsel.

[8] *See*, Leibowitz Declaration, ¶¶ 43-44.

affidavit of Otway dated November 11, 2021, Otway advised the State Court that the Debtors "expect a mortgage loan to come through within the next 90 days." (*i.e.*, by February 9, 2022).[9] The LLC Debtor then continued to tell this fantasy tale during this Chapter 11 case. It first represented to the Court at a February 3, 2022 status conference that the LLC Debtor's indebtedness to the Lender would be paid in full by the end of February 2022 or possibly March 2022. On or about March 24, 2022, it again advised the Lender that it "may" have found a lender willing make a loan. However, despite Lender's repeated requests, the LLC Debtor failed to (i) provide a commitment letter or (ii) advise as to the amount of the net available proceeds of such a loan.  If the LLC Debtor truly had the ability to refinance its indebtedness to Lender as it has repeatedly claimed, clearly some lender over the last 16 months would have come forward and lent the LLC Debtor sufficient funds to refinance its indebtedness. The failure to obtain a new loan is not at all surprising since the LLC Debtor is collecting little to no rents and the Debtors' affiliates occupy the vast majority of the Real Property. To the point, the LLC Debtor has nothing more than naked speculation and wishful thinking that a white knight will save the day -- all while default interest, taxes, legal fees and other amounts and costs of administration grow daily, including U.S. Trustee fees. Due to its inability to obtain replacement financing for 16 months, the LLC Debtor has no reasonable likelihood of rehabilitation.

11.     Additional "cause" exists under § 1112(b)(4)(I) to convert this Chapter 11 case. It is undisputed that the LLC Debtor has failed to timely pay post-petition taxes of $72,452 and lacks any available funds to make such payment. *See*, **Exhibit 23**, Part 6(f) and 7(f); ECF No. 34, Part 6(f) and 7(f).  Indeed, the Debtors have failed to pay any property taxes since the Maturity Date -- 16 months ago.

---

[9] *See*, Leibowitz Declaration, ¶ 47, **Exhibit 19**, ¶ 36.

12. "Cause" further exists under § 1112(b)(4)(B) or § 1104(a)(1) and (a)(2) to appoint either a Chapter 7 trustee or a Chapter 11 operating trustee due to the LLC Debtor's gross mismanagement and incompetence which, in turn, has led Lender to have no trust or confidence that the LLC Debtor can rehabilitate itself. As noted, between December 31, 2020 and March 2, 2022, the LLC Debtor has permitted at least $2,386,491 of debt to Lender to accrue while doing absolutely nothing to salvage its equity in the Real Property. Likewise, property taxes due January 1, 2022 remain unpaid and continue to accrue interest. Further, to hinder Lender's efforts to realize on monies owed, just immediately prior to the maturity of the Loan, the LLC Debtor entered into brand new multi-year leases with the Individual Debtor and its affiliates which gutted the rental obligations payable to the LLC Debtor by approximately $28,500 a month. Moreover, even after manufacturing below market leases, the Individual Debtor Affiliated Non-Debtors paid little to no rent and the LLC Debtor has done nothing to collect the substantial pre-petition and post-petition rent and use and occupancy owed. Further, Lender has requested a schedule of outstanding account receivables. However, the exact amount of outstanding receivables is still unknown because, during a meet and confer conference, the LLC Debtor's counsel finally conceded that the LLC Debtor does not even maintain an actual running record of monies owed by each tenant. The failure to maintain basic books and records showing outstanding account receivables for each of its tenants (*i.e.*, the Debtors' affiliates), coupled with LLC Debtor continuing to allow its affiliates to use and stay in possession of space at the Real Property rent free is further evidence of the LLC Debtor's gross mismanagement, self-interest, and incompetence. A trustee is needed to investigate and pursue the amounts owed and to manage the Real Property going forward.

13. Finally, as further evidence that the Individual Debtor's emotional and erratic behavior cannot be reined in and will continue to prevent the Debtors from moving this case

forward in any meaningful way, the LLC Debtor has reneged on the global Term Sheet submitted to this Court on February 28, 2022. Specifically after the Lender objected to the LLC Debtor's DIP Financing Motions (seeking a priming Lender's liens in order to pay operating expenses, management fees to Otway and fees to LLC Debtor's counsel) and the Court scheduled an evidentiary hearing thereon, the LLC Debtor negotiated a consensual settlement of all outstanding issues with Lender and apprised the Court of same by way of a letter sent to the Court on February 28, 2022, along with the Term Sheet. *See* **Exhibit 1**. Under the Term Sheet, among other things, the LLC Debtor agreed to the amount owed to Lender and that that if it did not refinance and pay the Lender in full by June 2, 2022, then it would schedule a Section 363 auction sale in August. After submitting the Term Sheet to the Court, the LLC Debtor has walked away from that settlement (after causing Lender to spend countless hours preparing and negotiating the full-bodied agreement). It is now apparent that the LLC Debtor cannot be trusted or reorganize. Accordingly, a Chapter 7 or Chapter 11 trustee is needed.

14.     For these reasons and the reasons set forth below, the Motion should be granted.

## ARGUMENT

### POINT I

### CAUSE EXISTS TO CONVERT THIS CASE TO CHAPTER 7

15.     Section 1112(b)(1) of the Bankruptcy Code provides, in part, that:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

§ 1112(b)(1).

16.     Section 1112(b)(4) contains sixteen examples of events that may constitute cause.

This list, however, is "not exhaustive" and courts are free to consider other factors. *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) (Glenn, B.J.) *citing In re Ameribuild Const. Mgmt., Inc.*, 339 B.R. 129, 131 n. 3 (Bankr. S.D.N.Y. 2009). *See also, In re Red Bull Taxi Inc.*, No. 16-13153 (MKV), 2017 WL 1753234, at *2 (Bankr. S.D.N.Y. May 3, 2017).

17.     Cause includes (i) "a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." (§ 1112(b)(4)(A)), (ii) a debtor's failure to timely pay taxes owed after the date of the order for relief (§ 1112(b)(4)(I)), and (iii) gross mismanagement (§ 1112(b)(4)(B)). Here, ample cause exists to convert this Chapter 11 single asset real estate case to a case under Chapter 7 of the Bankruptcy Code for each of such grounds.

## A. <u>Cause Exists to Convert this Case Pursuant to § 1112(b)(4)(A)</u>

18.     A Chapter 11 case may be converted or dismissed under § 1112(b)(4)(A) for the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Courts in this District have acknowledged that § 1112(b)(4)(A) is "intended to preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *In re Red Bull Taxi Inc.*, *supra*, 2017 WL 1753234, at *2; *see also In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) *citing United States Trustee v. GPA Technical Consultants, Inc. (In re GPA Technical Consultants, Inc.)*, 106 B.R. 139, 141 (Bankr. S.D.Ohio 1989).

19.     Section 1112(b)(1) provides that once cause is established, the case ***shall*** be dismissed or converted unless the Court specifically finds unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate. Section 1112(b)(2) places the burden of proof of

demonstrating such special circumstances on the debtor. However, the unusual circumstances exception to dismissal or conversion under Section 1112(b)(2) is not applicable, as in this case at bar, where the movant seeks dismissal or conversion based on the loss and diminution of estate assets and absence of a reasonable likelihood of rehabilitation under Section 1112(b)(4)(A). *See In re Westhampton Coachworks, Ltd.*, No. 09-73008-AST, 2010 WL 5348422, at *5 (Bankr. E.D.N.Y. Dec. 21, 2010).

20.     Section 1112(b)(4)(A) requires a twofold inquiry. *Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007). "First, the Court must look at the track record of the Debtor to determine if it is suffering losses or making gains. Second, the Court must determine whether rehabilitation is likely given the evidence presented." *Id*.

     **(i)**      **The LLC Debtor is Suffering Substantial or**
                **Continuing Loss to or Diminution of the Estate**

21.     "Courts have found that cause exists under section 1112(b)(4)(A) when a debtor has a negative cash flow post-petition, and an inability to pay current expenses." *In re Red Bull Taxi* at *2, *citing In re Adbrite Corp*., 290 B.R. at 215. *See also*, *In re E. 81st, LLC*, No. 13-13685 (SMB), 2014 WL 4548551, at *6 (Bankr. S.D.N.Y. Mar. 17, 2014) ("A negative cash flow is sufficient standing alone to establish continuing loss or diminution."); *In re Halal 4 U LLC*, No. 08-15216 (MG), 2010 WL 3810860, at *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (Glenn, B.J.) (finding cause to convert exists where a debtor owes substantial post-petition mortgage payments and has not evidenced payment of taxes); *In re Taub,* 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) ("One indication of continuing loss to the bankruptcy estate is negative cash flow after the bankruptcy case is commenced. Another indicator is the debtor's inability to meet the basic operating expenses critical to the viability of its enterprise, notwithstanding the protection of the automatic stay.") (internal quotation marks and citations omitted*); In re FRGR*

*Managing Member LLC*, 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009) (Glenn, B.J.) (conversion of case was appropriate where debtor "continues to incur quarterly U.S. Trustee fees as well as legal fees, causing a continuing loss to the estate."); *In re Route 202 Corp. t/a Lionti's Villa,* 37 B.R. 367, 374 (Bankr. E.D.Pa. 1984) ("Obviously, if the debtor has negative cash flow after entry of the order for relief in the chapter 11 case, the [elements of § 1112(b)(1) are] satisfied"); *In re Galvin,* 49 B.R. 665, 669 (Bankr. D.N.D. 1985) ("Post-petition negative cash flow is considered by courts to be evidence of continuing losses required by section 1112(b)(1)").

22.     Further, "[i]t is not necessary that the losses to the estate be large. All that need be found is that the estate is suffering some diminution in value." *In re Halal 4 U LLC*, 2010 WL 3810860, \*4 *citing In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988).

23.     On the first prong, there can be no credible dispute that the LLC Debtor is suffering losses. The Debtors admitted in the Forbearance Agreement that as of December 31, 2020, they were indebted to the Lender in the sum of $6,245,653.65. *See*, **Exhibit 14**, p. 4. They then admitted in the State Court's Consent Order that, as of November 29, 2021, they were indebted to the Lender in the sum of at least $7,980,855.65. *See*, **Exhibit 20**, p. 5. The Debtors further admitted in the Term Sheet that they are indebted to Lender, as of March 2, 2022, in the sum of at least $8,632,148,78. *See*, **Exhibit 1**. Further, as set forth in a March 28, 2022 letter to the LLC Debtor, the estimated amount owed as of April 1, 2022 is $9,071,421.73. *See*, **Exhibit 21**. Thus, the LLC Debtor's equity in the Real Property plummeted by more than $2,825,768.08 between December 31, 2020 and April 1, 2022 (*see* Leibowitz Declaration, ¶ 58, and **Exhibit 21**). In addition, the LLC Debtor failed to pay $72,452.48 in post-petition property taxes (*See*, **Exhibit 24**), which unpaid debts are a further loss to the estate.

24.     The 12/29/21 Otway Declaration, the 1/19/22 Otway Declaration, the LLC

Debtor's Schedules of Assets and Liabilities (the "**Schedules**"), the Statement of Financial Affairs ("**SOFA**"), and the January 2022 Operating Report further confirm the LLC Debtor's substantial negative cash flow.

25.     In the SOFA, the LLC Debtor listed no revenues for 2021 and only $105,650 in revenues for 2020. *See*, **Exhibit 3**, Official Form 207, Part 1; ECF No. 1, Official Form 207, Part 1 (p. 20 of 38). As of the Petition Date, the LLC Debtor had <u>no cash</u> on hand. *See*, **Exhibit 3**, Schedule A/B, Part 1, Q. 1 and Part 12, Q. 80; ECF No. 1 (p. 10 of 38), Part 1, Q. 1 and Part 12, Q. 80 (p. 13 of 38).  Further, the LLC Debtor lists no accounts receivables. *Id*., Schedule A/B, Part 3, Q. 10; ECF No. 1 (p. 10 of 38).

26.     The Affiliated Non-Debtors, which continue to use and occupy approximately eighty-five percent (85%) of the Real Property, and based on the January 2022 Operating Report, have paid no post-petition rent and it appears that the Individual Debtor (who has not paid any rent either) has no intention to demand or collect such rental obligations on behalf of the LLC Debtor or otherwise seek new paying tenants. *See*, **Exhibit 23**.

27.     The substantial ongoing losses are admitted the LLC Debtor. Indeed, it has expressly admitted that its post-petition "operational" expenses far exceed its revenues and that the LLC Debtor cannot even pay its basic operating expenses. According to the 1/19/22 Otway Declaration, the LLC Debtor "expects to collect rent in the amount of approximately $8,950 each month going forward" (**Exhibit 22**; ECF No. 15-1, ¶ 11) while the LLC Debtor "will accrue monthly administrative expenses of approximately $27,754.20, not including administrative costs and expenses (including legal fees), which will accrue throughout the course of its chapter 11 case." (*id.* at ¶ 8). Thus, by the LLC Debtors' own admissions, the LLC Debtor has losses of at least $18,804 ($27,754 - $8,950) a month (or $225,648 per year).

28.     In reality, the LLC Debtor's financial losses are far worse that it represented. For

example, while the LLC Debtor represented that it hoped to receive $8,950 in rental income a month (an amount that is still insufficient to have positive income), this too proved false. According to January 2022 Operating Report, the LLC Debtor received zero ($0) in cash receipts for January 2022. *See,* **Exhibit 23**, Part 1(b); ECF No. 34, Part 1(b) (p. 2 of 13). Thus, the LLC Debtor's loss for January was actually $27,754 per month (*i.e.*, worse than projected).

29.     In addition, the substantial losses reported by LLC Debtor are grossly understated because the LLC Debtor's calculations exclude, *inter alia*, accruing interest and attorneys' fees owed to Lender. The LLC Debtor made no pre-petition payments to Lender since the Loan matured on December 1, 2020, and made no post-petition adequate protection payments to Lender either. The LLC Debtor has acknowledged in the 12/29/21 Otway Declaration that interest accrues on its indebtedness to the Lender by at least $4,600 each day. *See*, **Exhibit 2**, ¶ 34; ECF No. 2, ¶ 34. Thus, LLC Debtor owes $138,000 in interest on a monthly basis (or $1,656,000 annually) which amounts are nowhere contemplated in the LLC Debtor's estimate of monthly expenses. In other words, the LLC Debtor's actual monthly expenses are not the mere $27,754 per month that it represented; the actual monthly expenses exceed $165,754 ($138,000 + $27,754) -- not even counting the Lender's legal fees or the LLC Debtor's own administrative legal fees or the US Trustee fees, all of which continue to accrue. **Thus, even if the LLC Debtor collected monthly rental income of $8,950, it would still have a monthly loss of at least $156,804** ($165,754 - $8,950), not even including the accrual of legal fees.

30.     Furthermore, the LLC Debtor admittedly failed to pay its post-petition real estate taxes that were due on January 1, 2022. According to the January Operating Report, it failed to pay post-petition property taxes of $72,452. **Exhibit 23**, Part 6(f) and 7(f); ECF No. 34, Part 7(f) (p. 8 of 13). This is confirmed by the Department of Finance's website showing $72,242.48 in unpaid taxes as of March 30, 2022. *See*, **Exhibit 24**. While the unpaid post-petition taxes

constitute an independent basis for "cause" to convert this Chapter 11 case under § 1112(b)(4)(I), it also constitutes "cause" under § 1112(b)(4)(A) because accruing unpaid taxes constitutes a diminution of the estate. *See, e.g., In re Hinchliffe*, 164 B.R. 45, 52 (Bankr. E.D.Pa. 1994) (accrual of unpaid post-petition taxes found to constitute diminution of the estate).

31.     The Individual Debtor's failure to cause himself and his Affiliated Non-Debtors to pay rent and use and occupancy over the past 16 months continues to permeate the LLC Debtor's demise as its monthly expenses grossly exceed its monthly revenue and the LLC Debtor has insufficient cash to operate its business affairs, pay New York City real estate taxes, make adequate protection payments to the Lender, pay U.S. Trustee fees, and otherwise pay its other post-petition obligations as they come due.

32.     Section 1112(b)(4)(A) is amply satisfied in that the LLC Debtor continues to have substantial negative cash flow and cannot pay current administrative expenses, including real estate taxes, resulting in a diminution of the LLC Debtor's estate.

**(ii)     There Is No Reasonable Likelihood of a Rehabilitation**

33.     With respect to the second element of § 1112(b)(4)(A), the term "rehabilitation" has been interpreted by courts to mean "to put back in good condition; re-establish on a firm, sound basis." *In re Red Bull Taxi* at *2, *citing In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995) (quoting 5 *Collier on Bankruptcy* ¶ 1112.03 at 1112–19 (Lawrence P. King *et al.* eds., 15th ed. 1995)) (internal quotation marks omitted); *In re AdBrite Corp.*, 290 B.R. at 216. It signifies that the applicable debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met. *In re Rundlett*, 136 B.R. 376, 380 (Bankr. S.D.N.Y. 1992).

34.     Here, the totality of the facts overwhelmingly demonstrate that there is no likelihood of rehabilitation. The LLC Debtor has had more than 16 months to refinance the Loan

but has failed to do so. *See,* Leibowitz Declaration at ¶¶ 67-69. Moreover, it is not at all

surprising that LLC Debtor has failed to effectuate a refinance of the Loan given that, among

other things, the LLC Debtor it expects to receive only $8,950 in monthly rents -- an amount that

is materially insufficient to pay its ongoing operating expenses. *See,* Leibowitz Declaration at ¶¶

62-64. Such paltry amount of revenue is plainly insufficient to pay any debt service to a new

lender. Moreover the Lender's claim as of April 1, 2022 is at least $9,071,421.73 (s*ee* **Exhibit**

**21**; Leibowitz Declaration, ¶ 58).  It is unreasonable to expect that a third party lender would

make a loan in amount sufficient to pay Lender's claim -- especially in this situation where,

among other things, the LLC Debtor's revenue is only $8,950 a month, and its insiders occupy

the vast majority of the premises.

35.     Further, while the LLC Debtor has recently advised that it "may" be able to obtain

a new loan, such communication  is nothing more than the same meritless representations that

Lender has heard for the last 16 months. Lender's counsel repeatedly requested that the LLC

Debtor provide a commitment letter as to such potential new loan – but no commitment letter

was provided and no closing on a loan is scheduled.

36.     Indeed, it is a tell that the LLC Debtor now refuses to proceed with the Term

Sheet that it agreed to (just a few weeks ago) in the context of resolving the DIP Financing

Motions. Under the Term Sheet (*see* **Exhibit 1**), the LLC Debtor agreed to a path forward in this

bankruptcy case (*i.e.*, the same path forward contemplated in the Forbearance Agreement and the

Consent Order): to refinance its indebtedness (*i.e.*, by June 2, 2022) or otherwise sell the Real

Property (*i.e.*, by September 6, 2022). The LLC Debtor plainly balked at concluding the

settlement based on the Term Sheet because it now knows that it still cannot refinance its debt

prior to June 2, 2022 – ***19 months after the December 1, 2020 maturity date*** - and is unwilling

to commit to a timeline to cause a sale of the Real Property.

37.     While the LLC Debtor wishes to hold out hope forever, it is doing so at the expense of the Lender and the LLC Debtor's other creditors. Default rate interest and other costs and expenses, including attorneys' fees, continue to accrue under the Loan and further delay in the sale of the Real Property will impair Lender's ability to recover its claim against the estate, leaving general unsecured creditors with little or no recovery on account of their claims.

38.     Pursuant to §1112(b)(1), upon making a finding that cause exists under §1112(b)(4)(A), the Court is required to convert this Chapter 11 case to a case under Chapter 7. *See Westhampton Coachworks*, *supra,* 2010 WL 5348422, at *5.   For the reasons set forth above, the case should be converted for cause pursuant to §§ 1112(b)(1) and 1112(b)(4)(A).

### B.  **Cause Exists to Convert this Case Pursuant to § 1112(b)(4)(I)**

39.     Section 1112(b)(4)(I) provides that "cause" to convert a Chapter 11 case to Chapter 7 includes a debtor's "failure [to] timely [] pay taxes owed after the date of the order for relief…"

40.     Here, in black and white terms, it is undisputed that the LLC Debtor (i) filed its Chapter 11 case on December 29, 2021, and (ii) failed to pay New York City real estate taxes in the sum of $72,452 which were due on January 1, 2022. *See*, **Exhibit 23**, Part 6(f) and7(f). As of March 30, 2022, the LLC Debtor owes $72.452.48 for unpaid post-petition property taxes. *See*, **Exhibit 24**.  There are no unusual circumstances in this single asset real estate case that excuse the LLC Debtor from complying with its basic post-petition administrative obligations. Indeed, the LLC Debtor cannot provide a reasonable justification for its failure to pay post-petition taxes or demonstrate that its failure to do so will be cured within a reasonable time. *See*, § 1112(b)(2). This much is clear because the LLC Debtor has no available funds to pay the overdue real estate taxes, and interest on such amounts (and additional property taxes in the approximate amount of $70,167 will be due on July 1, 2022 ) -- all while the LLC Debtor's expected revenue is only

$8,950 a month). *See, Westhampton Coachworks, supra,* 2010 WL 5348422, at *5 (failure to pay post-petition taxes constitutes cause to convert the case). Further, due to the LLC Debtor's non-payment of such taxes, Lender's first priority lien is being subordinated to the City of New York and Lender is not being adequately protected.

41.     Accordingly, this Chapter 11 case should be converted for "cause" to a case under Chapter 7 pursuant to § 1112(b)(4)(I).

C.     **Cause Exists to Convert this Case Pursuant to § 1112(b)(4)(B)**

42.     Section 1124(b)(4)(B) provides that "cause" to convert a Chapter 11 case to Chapter 7 includes a debtor's "gross mismanagement of the estate."

43.     The LLC Debtor's pre-petition and post-petition behavior supports a finding of gross mismanagement and incompetence. Otway has breached and continues to breach his fiduciary duties to the LLC Debtor to further his self-interest.

44.     As detailed in the Leibowitz Declaration, immediately prior to the Maturity Date of the Loan, the Debtors terminated the market 2019 Leases and caused the LLC Debtor to enter into below market 2020 Leases with its Affiliated Non-Debtors. *See*, Leibowitz Declaration, ¶¶73-77.  Also, each of the 2020 Leases were for a number of years, whereas the 2019 Leases were each for only one year. *Id.* ¶ 77. Thus, as result of the 2020 Leases to the Debtors' insiders, **Otway encumbered the Real Property and reduced the LLC Debtor's monthly rent roll by $28,500 (*i.e.*, a reduction of over 54%)**. *Id.* ¶ 77. And even with the creation of below market 2020 Leases, the Individual Debtor and the Affiliated Non-Debtors still failed to pay rent and the LLC Debtor did nothing (and has done nothing) to collect such rent.

45.     To compound its mismanagement and self-dealing, the LLC Debtor's Schedules in this Chapter 11 case falsely report that it has no receivables. *See*, **Exhibit 3**, Schedule A/B, item No. 10ECF No. 1, Schedule A/B, item No. 10. However, because the Schedules reflect no

17

revenue at all for 2021, Otway and his Affiliated Non-Debtors must owe substantial sums for rent or use and occupancy for the past year (or more) and they continue to occupy the Real Property rent free. The LLC Debtor has taken zero steps to collect monies owed or otherwise replace the non-paying Affiliated Non-Debtors. Such actions constitute cause to convert this case. *See, e.g.*, *In re Fall*, 405 B.R. 863, 869 (Bankr. N.D. Ohio 2009), *aff'd sub nom. Fall v. Farmers & Merchants State Bank*, No. 3:08CV3012, 2009 WL 974538 (N.D. Ohio Apr. 9, 2009) (gross mismanagement exists where a debtor leased premises to insiders and debtor made no meaningful effort to collect rent from insiders). Just like in *In re Fall,* the LLC Debtor leased its property to insiders and has taken no acts to collect monies owed and/or evict them.

46.      Further, the LLC Debtor has no records, such as basic accounting software like Quick Books, to track outstanding accounts receivables for its tenants. On February 3, 2022, Lender requested that the LLC Debtor provide a schedule of all outstanding account receivables[10] -- however, such schedule has still not been produced. During a meet and confer conference between counsel, the LLC Debtor's counsel advised that the LLC Debtor does not even maintain a running balance of amounts owed by its tenants and therefore it cannot produce a schedule of outstanding receivables for its tenants. Instead, the LLC Debtor produced what appears to be a two page document from a word processor showing amounts only owed *by non-insiders* and *excluding* all amounts owed by the Affiliated Non-Debtors. *See*, **Exhibit 34**. As of the date hereof, the Debtors have failed to provide a basic schedule showing the amounts owed by the Debtors' insiders. Accordingly, the LLC Debtor's failure to maintain records is being used by the Debtors to hide the full scope of the amounts that Otway and the Affiliated Non-Debtors owe to the LLC Debtor.

47.      The LLC Debtor's Schedules are also inaccurate. For example, the LLC Debtor

---

[10] *See*, **Exhibit 33**.

represented to the Court that the LLC Debtor has an existing lease with Otway's affiliate SPI (*i.e.*, the Tavern) and that such lease has 13 years remaining before it expires. *See*, **Exhibit 3**, Schedule G; ECF No. 1, at Schedule G (p. 17 of 38). However, the LLC Debtor, Otway and his Affiliated Non-Debtors (including SPI) agreed *twice* -- first in the Forbearance Agreement and then in the Consent Order -- that the lease with SPI was, in fact, terminated. *See*, **Exhibit 14**, Section 8.6(a)(i), (c), (e) and (d) (sic); and **Exhibit 20**, ¶ 8.6(a)(i), (c), (e) and (d) (sic). As the termination of all leases was a material term in both the Forbearance Agreement and the Consent Order, the LLC Debtor's claim that the SPI lease remains in effect was not an oversight but a deliberate misrepresentation so as to try to improperly encumber the Real Property.

48.     Further, the LLC Debtor listed Lender's claim against them was "disputed" on its Schedules. *See*, **Exhibit 3**, Schedule D. Specifically, the LLC Debtor asserted that the Lender holds a "disputed" $7,980,855.65 claim. However, because the Debtors conceded in the Consent Decree that this exact amount is owed to the Lender as of November 30, 2021, there exists no good faith basis to dispute the Lender's claim. *See*, **Exhibit 20**, p. 5.

49.     These misrepresentations alone constitutes a sufficient basis to convert the LLC Debtor's case.  *In re Halal 4 U LLC*, No. 08-15216 (MG), 2010 WL 3810860, at *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (finding mismanagement where Debtor failed to accurately represent its interest in properties).

50.     For these reasons, cause exists to convert this case pursuant to §§ 1112(b)(1) and 1112(b)(4)(B).

## POINT II

### ALTERNATIVELY, A CHAPTER 11 TRUSTEE SHOULD BE APPOINTED UNDER BOTH SECTIONS 1104(A)(1) AND (A)(2) OF THE BANKRUPTCY CODE

51.     Alternatively, if the Court declines to convert the LLC Debtor's case to Chapter 7, the Court should appoint a Chapter 11 trustee pursuant to both Sections 1104(a)(1) and (a)(2).

52.     Section 1104(a) of the Bankruptcy Code provides for the appointment of Chapter 11 trustee. It states, in relevant part:

> (a) At any time after the commencement of the case but not before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the **court shall order** the appointment of a trustee –
>
>> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause... or
>>
>> (2) in such appointment is in the best interest of creditors, any equity security holders, and other interests of the estate...

11 U.S.C. §§ 1104(a)(1) and (a)(2). (Emphasis supplied).

53.     "Section 1104(a) is phrased in the disjunctive, meaning that there are two discrete predicates for the appointment of a reorganization trustee.  Such appointment is authorized upon a showing of cause, as defined, or demonstration that the appointment is in the interests of the parties. Once the court has found that cause exists under § 1104(a)(1); there is no discretion; an independent trustee must be approved." *In re V. Savino Oil & Heating Co., Inc.*, 91 B.R. 518, 525 (Bankr. E.D.N.Y. 1989). *See also*, *In re Anchorage Boat Sales, Inc.*, 4 B.R. 635, 644 (Bankr. E.D.N.Y. 1980) (Under § 1104(a)(1), the court's discretionary powers are circumscribed and limited to a judicial determination of whether "cause", as enumerated, exists). Indeed, "the willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities as a trustee. And if the debtor-in-possession defaults in this respect, Section 1104(a)(1) commands that the stewardship of the reorganization must be turned over to an independent trustee".  *In re V. Savino Oil & Heating*, 91 B.R. at 526. *See also*, *In re U.S. Communications*, 123 B.R. 491, 495

(Bankr. S.D.N.Y. 1991) (appointing trustee where debtor engaged in conduct revealing "a lack of competence to conduct a business operation in furtherance of its fiduciary duty to creditors").

54.     While the statute expressly cites fraud, dishonesty, incompetence, and gross mismanagement for the appointment of a chapter 11 trustee, grounds for cause are not limited to these specifically enumerated derelictions. *In re V. Savino Oil & Heating*, 91 B.R. at 525. Indeed, the list of wrongs constituting "cause" that warrants the appointment of a trustee is not exhaustive; some other "[f]actors relevant to the appointment of a trustee under § 1104(a)(1) include: conflicts of interest, including inappropriate relations between corporate parents and the subsidiaries; misuse of assets and funds; inadequate record keeping and reporting; various instances of conduct found to establish fraud or dishonesty; and lack of credibility and creditor confidence." *In re Ashley Riv. Consulting, LLC*, 14-13406 (MG), 2015 WL 1540941, at *9 (Bankr. S.D.N.Y. Mar. 31, 2015).

55.     In *In re V. Savino Oil & Heating*, the Court found that the timing, together with facts and circumstances surrounding the formation of a second corporation prior to a bankruptcy proceeding, "represented a calculated and calibrated effort in contemplation of the Chapter 11 filing to place the Debtor's retail fuel operations beyond the reach of creditors." 91 B.R. at 526. The Court therefore found that "[t]his pre-petition course of conduct, in and of itself, constitutes 'cause' for the appointment of a Chapter 11 trustee". *Id. See also*, *In re PRS Insurance Group, Inc.*, 2001 Bankr. LEXIS 220, at *10 (Bankr. Del. 2001) (diversion of funds and misuse of corporate assets constitute fraud or dishonesty sufficient to warrant appointment of a trustee under section 1104(a)(1)); *In re Intercat, Inc.*, 247 B.R. 911 (Bankr. S.D. Ga. 2000) (trustee appointed where debtor's director paid compensation to himself by making loans without repayment, personal travel expenses were charged to debtor, exhibiting incompetence or mismanagement, and debtor's intellectual property assets were transferred to one of the

director's insider companies); *In re Bibo, Inc.*, 76 F.3d 256, 257-78 (9th Cir. 1996) (appointment of a trustee was mandated where management had siphoned funds from the debtor through kickbacks); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3rd Cir. 1989) (systematic siphoning of debtor's assets to other companies under shareholder's common control constituted cause for appointment of trustee).

56.     The Court should appoint a Chapter 11 operating trustee for the same reasons why cause exists for the conversion of this case to Chapter 7. Here,

    a.     The Individual Debtor has mismanaged and acted incompetently in managing the affairs of the LLC Debtor. Indeed, the LLC Debtor's repeated refusal to honor its agreement to sell the Real Property over the last 16 months has caused the LLC Debtor's equity in the Real Property to drop by at least $2,386,491 placing the creditors' ability to recover on their claims against the estate in jeopardy;

    b.     The LLC Debtor fraudulently created long term leases with the Affiliated Non-Debtors on the eve of the Loan's Maturity Date which, among other things, materially gutted their monetary obligations and, even with the significantly reduced rental obligations, the Individual Debtor and the Affiliated Non-Debtors -- wholly owned by the Individual Debtor -- failed to pay the rent owed under such sweetheart below market leases. The LLC Debtor then did nothing to collect such rent or otherwise replace the Affiliated Non-Debtors with actual paying tenants; and

    c.     The LLC Debtor filed false Schedules and SOFA by swearing under oath to the Court that: (i) LLC Debtor has no account receivables owed by the Affiliated Non-Debtors when such entities have failed to honor their rental

obligations owed to the LLC Debtor under the below-market leases, (ii) the

SPI lease remains in effect when the LLC Debtor and SPI _twice_ stipulated in

the Forbearance Agreement and the Consent Order that all of the LLC

Debtor's leases, including the SPI lease, were terminated, and (iii) disputing

Lender's secured claim when such claim was actually stipulated to by the

Debtors in the Consent Order.

57.     In the unlikely event that the Court were to find that no "cause" exists under

Section 1104(a)(1), the Court should still appoint a trustee in this case under Section 1104(a)(2)

because a trustee is "in the best interest of creditors". _In re Ionosphere Clubs, Inc._, 113 B.R.

164, 168 (Bankr. S.D.N.Y. 1990) (subsection (a)(2) permits the court to appoint a trustee in the

interests of creditors and grants the court wide discretion to determine justification for the

appointment). Importantly, § 1104(a)(2) does not require a finding of cause. _See, e.g._, In re

_Marvel Entm't Group, Inc.,_ 140 F.3d 463, 474 (3rd Cir. 1998) (the court may appoint a trustee

even if no "cause" exists); _Sharon Steel Corp.,_ 871 F.2d at 1226; _Ionosphere Clubs, Inc.,_ 113

B.R. at 168.

58.     _In re Ashley Riv. Consulting, LLC_, 14-13406 (MG), 2015 WL 1540941, at *11

(Bankr S.D.N.Y. Mar. 31, 2015) identified factors to be considered by courts in assessing

whether to appoint a trustee pursuant to section 1104(a)(2). They include: (1) the trustworthiness

of the debtor, (2) the debtor's past and present performance and prospects for rehabilitation, (3)

the confidence - or lack thereof - of the business community and of creditors in

present management, and (4) the benefits derived from the appointment of a trustee, balanced

against the cost of the appointment. "In essence, § 1104(a)(2) reflects the practical reality that

a trustee is needed." Id_. See also, In re Taub_, 427 B.R. 208, 227 (Bankr. E.D.N.Y.

2010), _aff'd,_ 08 BK 44210 ESS, 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011) (appointing a

chapter 11 trustee and noting that "Courts have appointed trustees pursuant to Section 1104(a)(2) when there is "[a] high level of acrimony between a debtor's management and its creditors ..., particularly if that acrimony is hampering the prospects of rehabilitation.").

59.     Here, the Lender does not trust either of the Debtors and has lost all confidence in the LLC Debtor's ability to reorganize. The Debtors have repeatedly represented to the Lender that a refinancing was imminent and that LLC Debtor would sell the Real Property but, each and every time, such representations proved false. During this same time, Lender has watched the Real Property's equity erode by more than $2,825,768.08

60.     The Court should not permit the LLC Debtor to continue "business as usual" because LLC Debtor's actions (or inactions) will lead to creditors receiving a fraction of what they are entitled. Further, Lender's collateral is being jeopardized due to the LLC Debtor's failure to pay real estate taxes resulting in Lender's first priority lien being subordinated to the extent of such unpaid real estate taxes.  Further, there are no indications whatsoever that the LLC Debtor will be able to recover from its substantial losses. It claims that it had no revenue in 2021, the January 2022 Operating Report reflects no receipts, and the LLC Debtor continues to do nothing to collect on back rent owed by the Affiliated Non-Debtors or to replace them will paying tenants.

61.     Furthermore, the benefits of a Chapter 11 operating trustee are evident. A Chapter 11 operating trustee will stop the financial bleeding by selling the Real Property under a plan to ensure that all of the tax benefits under the Bankruptcy Code are realized for the benefit of creditors and the Individual Debtor.  For these reasons, the Court should appoint a Chapter 11 trustee.

**WHEREFORE**, for the foregoing reasons, it is respectfully requested that the Court (i) convert this Chapter 11 case to a case under Chapter 7, or, in the alternative, appoint a Chapter 11 operating trustee, and (ii) grant the Lender such other and further relief as is just and proper.

Dated: New York, New York
April 4, 2022

Respectfully submitted,

**KATSKY KORINS LLP**


By: /s/ Steven H. Newman
   Steven H. Newman, Esq.
   Robert A. Abrams, Esq.
605 Third Avenue
New York, New York 10158
Telephone: (212) 953-6000

*Attorneys for St. Mark's Mixed Use LLC*