UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

78-80 ST. MARKS PLACE, LLC,

Debtor.

Chapter 11

Case No. 21-12139 (MG)

## ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

St. Mark's Mixed Use LLC (the "Lender") filed a motion seeking an order (i) converting the Chapter 11 case of 78-80 St. Marks Place, LLC (the "Debtor") to a case under Chapter 7, or, alternatively (ii) appointing a Chapter 11 trustee for the Debtor (the "Motion").[1] In support of the Motion, the Lender filed the declaration of Jason Leibowitz (the "Leibowitz Declaration," ECF Doc. # 36-1), along with the exhibits thereto. The Debtor's filed an objection to the Motion ("Objection," ECF Doc # 45) and supporting declaration of Lawrence V. Otway ("Otway Declaration," ECF Doc. # 45-1). The Lender filed a reply in support of the Motion ("Reply," ECF Doc. # 47), along with exhibits thereto. The Court held a hearing on the Motion on April 27, 2022 (the "Hearing"), and took the matter under submission to give the parties an opportunity to try to reach a consensual resolution to the Motion, but unfortunately, they were unable to resolve the matter. As explained below, the Court has determined that the Motion establishes the legal and factual bases to grant the requested relief, and, therefore, the Court orders the U.S. Trustee to appoint a Chapter 11 trustee.

The Court's findings of fact and conclusions of law are set forth below:

1. On December 29, 2021 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief under Chapter 11 of the Bankruptcy Code in this Court. (ECF Doc. # 1.)

---

[1] Capitalized terms not otherwise defined herein have the respective meanings ascribed to such terms in the Motion.

The Debtor is the fee owner of real property located at 78-80 St. Mark's Place (the "Property"). (*Declaration of Lawrence Otway Pursuant to Local Bankruptcy Rule 1007-2 and In Support Of the Debtor's Chapter 11 Petitions and First Day Pleadings* ("Rule 1007-2 Declaration"), ECF Doc. # 2 ¶ 9.)

2. The Property is a mixed-use property that holds three residential units, a meeting and storage space, and four operating businesses including Theatre 80 LLC ("Theatre 80"), William Barnacle Tavern (the "Tavern"), and Exhibition of the American Gangster, Inc (the "Museum," and collectively with Theater 80 and the Tavern, the "Businesses"). (*Id.* ¶¶ 9, 10.) The Debtor itself does not operate any business other than the ownership and maintenance of the Property, but the income derived by the Debtor is derivatively through the Businesses. (*Id.* ¶ 9.)

3. Mr. Otway wholly owns the Debtor and the Businesses. (*Id.* ¶ 9; Leibowitz Declaration ¶¶ 12, 15.) Mr. Otway is a debtor in another case pending before this Court (*Lawrance v. Otway*, Case No. 21-12140). (*Id.* ¶ 12.) The Lender states that Mr. Otway, Eugenie Otway (Mr. Otway's wife), and the Businesses occupy approximately 85% of the Property. (*Id.* ¶ 16.) It is undisputed that the Mr. Otway is living on the Property and has not paid rent during the pendency of the Debtor's bankruptcy case. (*See* April 27, 2022 Hearing Transcript ("Hr'g Tr."), ECF Doc. # 56 at 20:10–12; 42:13–17.)

4. The Lender is the assignee of a loan made by 80 St. Marks Place Funding LLC (the "Original Creditor") to the Debtor on or about November 12, 2019, in the principal amount of $6,100,000 ("Loan"). (Rule 1007-2 Declaration ¶ 16.) The Loan is evidenced by a Promissory Note ("Note") given by the Debtor in favor of the Original Creditor. (*Id.*) The Note is secured by (i) a Mortgage and Security Agreement, dated November 12, 2019, executed by the Debtor, as Mortgagor, to the Original Creditor, as Mortgagee, encumbering (among other things) the Property

("Mortgage"), and (ii) an Assignment of Leases and Rents, dated November 12, 2019, from the Debtor, as Assignor, to the Original Creditor, as Assignee ("ALR"). (*Id.*) The Original Creditor perfected its security interest in the collateral granted under the Mortgage by duly recording the Mortgage with the New York City Register and filing a UCC-1 financing statement. (*Id.* ¶ 18.)

5. On November 12, 2019, Mr. Otway personally guaranteed the Debtor's obligations under the Loan ("Guarantee"), and also executed a Pledge and security Agreement ("Pledge Agreement") in favor of the Original Creditor. (*Id.* ¶ 17.) Pursuant to the Pledge Agreement, Mr. Otway pledged to the Original Creditor all of his rights, title and interests in, to and under his membership interests in the Debtor (the "Pledged Collateral"). (*Id.*) The Original Creditor perfected its security interest in the Pledged Collateral by taking possession of the certificate of membership interests in the Debtor ("Certificated Interests") and filing UCC-1 financing statements. (*Id.* ¶ 18.)

6. On or around December 1, 2020 (the maturity date of the 2019 Loan), the 2019 Loan, Note, Mortgage, ALR, Guaranty, Pledge Agreement, Certificated Interests, all UCC financing statements, and all other documents evidencing, securing or guarantying the Loan were each duly assigned by the Original Creditor to the Lender. (*Id.* ¶ 19.)

7. On December 7, 2020, the Lender sent a letter to the Debtor and Mr. Otway notifying them that (i) the Loan had matured and the indebtedness became immediately due and payable under the Note and Mortgage, (ii) the Debtor failed to pay the entire indebtedness within 5 days when it became due, constituting an Event of Default under both the Note and Mortgage, (iii) and interest on the indebtedness began to accrue at the Default Rate (24% per annum) from and after December 2, 2020. (*Id.* ¶ 27.)

3

8. The Debtor advised the Lender that it expected to quickly refinance the Loan and requested that the Lender temporarily forbear from scheduling a UCC sale of the Pledged Collateral. (Leibowitz Declaration ¶ 31.) The Debtor, Mr. Otway, and other affiliated non-debtors executed the Forbearance agreement, dated January 14, 2021 ("Forbearance Agreement"), whereby the Lender agreed to extend certain obligations under the Loan Documents to afford the Debtor time to refinance the Loan. (*Id.* ¶¶ 31, 32, 35.) Additionally, the Debtor acknowledged and agreed under the Forbearance Agreement that interest began to accrue on the Loan at the Default Rate (24% per annum) as of December 2, 20220, and that the Debtor was indebted to the Lender in the sum of $6,245,653.65, plus legal fees and protected advances from and after December 18, 2020. (*Id.* ¶34.)

9. Under the Forbearance Agreement, if the Debtor failed to repay in less than 4 months, the Debtor was required to list the Property for sale at $11,000,000 with the price decreasing each month through July 15, 2021, to a final listing price of $8,500,000. (*Id.* ¶ 36.) If the Property was not sold by August 15, 2021, the Prepetition Lender would have the right to foreclose without opposition. (*Id.* ¶ 37.)

10. The Property was not sold by August 15, 2021 and on September 3, 2021 the Prepetition Lender forwarded a Notice of Disposition of Collateral stating that the Pledged Collateral would be sold at a public auction on November 18, 2021. (*Id.* ¶ 45.) On November 11, 2021, the Debtor, along with Mr. Otway and other related plaintiffs commenced an action in the Supreme Court of the State of New York, New York County, under Index No. 656446/2021, seeking to enjoin the sale of the Pledged Collateral (the "State Court Action"). (*Id.* ¶ 46.) In the State Court Action, the Debtor represented to the State Court that a refinancing of the Property was imminent. (*Id.* ¶ 47.)

11. On November 29, 2021, the State Court Action was voluntarily dismissed upon entry of a So-Ordered Stipulation and Dismissal of Action (the "Consent Order"). (*Id.* ¶ 47.) Pursuant to the Consent Order, the Lender once again agreed to forbear exercising remedies under the Pledge Agreement through December 30, 2021. (*Id.* ¶ 48.) The Consent Order also provided that the Debtor and Lender agreed that as of November 30, 2021, the amount due and owing to the Lender was $7,980,855.65, plus additional legal fees and protected advances from and after November 21, 2021. (*Id.* ¶ 49 (citing Consent Order, Ex. 20 at 5).) The Debtor failed to refinance the Property by December 30, 2021. (*Id.* ¶ 50.)

12. On January 29, 2022, the Debtor filed a motion to approve debtor-in-possession financing on a super priority basis ("DIP Motion," ECF Doc # 14) and a motion to use cash collateral ("Cash Collateral Motion, ECF Doc. # 15, and together with the DIP Motion, the "DIP Financing Motions"). (*Id.* ¶ 52.) The DIP Financing Motions were originally scheduled to be heard on February 3, 2022, but were adjourned to March 2, 2022 for purposes of conducting an evidentiary hearing. (*Id.*) The Lender filed an omnibus objection to the DIP Financing Motions ("Objection to DIP Financing Motions," ECF Doc. # 24) and the Debtor filed a reply in support of the DIP Financing Motions (ECF Doc. # 30).

13. In connection with the DIP Financing Motions, the Debtor asserted that the value of the Property was $13,680,000 as of December 31, 2021, based on an appraisal of the Property. (DIP Motion at 17, ¶ 19; Cash Collateral Motion ¶ 32; *see also* ECF Doc. #14-3 ¶ 21.) The Lender, relying on its own appraisal of the Property, asserted that the Property is worth $10,200,000 as of February 9, 2022. (Objection to DIP Financing Motions ¶ 73; *see also* ECF Doc. # 25 ¶ 9.)

14. On February 28, 2022, the Debtor and Lender informed the Court that they had agreed to resolve the DIP Financing Motions and the way the Debtor's Chapter 11 case would

proceed to conclusion. (Leibowitz Declaration ¶ 54.) The parties requested that the March 2, 2022 evidentiary hearing be adjourned without date to allow the parties to contemplate a more fuller settlement. (*Id.* ¶ 53.) The parties were ultimately unable to reach an agreement on such a settlement and the Lender filed the Motion.

15. On February 27, 2022, the Debtor filed a late Monthly Operating Report for the month of January 2022 ("January 2022 MOR," ECF Doc. # 34.) On April 20, 2022, the Debtor filed (i) an amended January 2022 Operating Report ("Amended January 2022 MOR," ECF Doc. # 42), (ii) a late Monthly Operating Report for the month of February 2022 ("February 2022 MOR," ECF Doc. # 43), and (iii) a late Monthly Operating Report for the month of March 2022 ("March 2022 MOR," ECF Doc. # 44, and collectively with the Amended January 2022 MOR and February 2022 MOR, the "MORs").

16. The Amended January 2022 MOR lists the Debtor's monthly income as $8,950, the February 2022 MOR lists the Debtor's monthly income as $6,000, and the March 2022 MOR lists the Debtor's monthly income as $8,950 for a total post-petition income of $23,900. (*See* MORs at 2, Part 4.) The March 2022 MOR lists the Debtor's operating loss as $105,700 for the month and $350,037 for the year.[2] (March 2022 MOR at 2, Part 4.) Additionally, the March 2022 MOR lists $72,918 as the current and cumulative amount owed for "Postpetition income taxes accrued"[3] (the "Post-Petition Real Estate Taxes"). (*Id.* at 8, Part 6.)

17. On April 11, 2022, the Debtor filed an objection to the Lender's proof of claim, claim number 4 (the "Claim") seeking entry of an order reducing the amount of the Lender's claim

---

[2] The Lender points out that the March 2022 MOR fails to insert parentheses around the numbers $105,700 and $350,037, but these numbers represent losses and not profit. (Reply at 3 n. 4). The February 2022 MOR listed the current month operating loss as "$−55,948" and cumulative loss as "−$245,179" (February 2022 MOR at 2, Part 4), and the Debtor concedes that it is suffering continuing operating losses. (Objection ¶ 8; *see also* Hr'g Tr. 35:9–17, 41:11–13 ("[A]nd I'm not saying that once you figure in the tax payments, there isn't a loss . . . .").)

[3] It is undisputed that this amount is for unpaid real estate taxes and not income taxes.

6

by $885,034.22 and disallowing and expunging any amount of the Claim over $8,186,387.51 less any other unreasonable or unsubstantiated legal fees, unnecessary protective advances and interest at the default rate that has accrued prior to a hearing on the Claim Objection. ("Claim Objection," ECF Doc. # 39 ¶ 18.) The Lender filed a response to the Claim Objection on May 12, 2022. ("Response to Claim Objection," ECF Doc. # 54). In the Response to Claim Objection, the Lender asserts that the Claim should be allowed in the amount of $9,084,262.75. (*Id.* ¶ 81.) The Debtor filed a reply on May 16, 2022. ("Reply to Response to Claim Objection," ECF Doc. # 57.) A hearing on the Claim Objection was scheduled for May 17, 2022, at 10:00 a.m.

18. On April 15, 2022, the Debtor filed a rule 2004 motion ("Rule 2004 Motion," ECF Doc. # 41) seeking entry of an order authorizing the oral examination of, and requiring the production of documents by, the Lender and its parent and other affiliates. On April 25, 2022, the Lender filed an objection to the Rule 2004 Motion. (ECF Doc. # 48.)

19. At the Hearing, the Court took the Motion under submission and gave the Debtor and Mr. Otway until May 17, 2022 to attempt to reach a consensual agreement with the Lender and the United States Trustee regarding the process of selling the Property. (Hr'g Tr. at 43:9–14; 44:2–4; 45:9–12). The Court also directed the parties to file either joint or separate written status letters by May 11, 2022 at 5:00 p.m. (ET) to inform the Court whether an agreement has been reached. (*Id.* at 47:5–8.)

20. On May 10, 2022, the Debtor filed a status letter stating that the Debtor and Lender have not yet agreed to a consensual resolution. (ECF Doc. # 51 at 1.) The Debtor also states that it intends to move forward with the Claim Objection and that it wishes to be heard on the Rule

2004 Motion.[4] (*Id.*) On May 11, 2022, the Lender filed a status letter stating that "the parties are nowhere near resolution" and requesting that the Court grant the Motion. (ECF Doc. # 52 at 1.)

21. Section 1112(b) of the Bankruptcy Code provides as follows:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). The moving party has the burden of demonstrating cause exists for dismissal or conversion by a preponderance of the evidence. *In re Loco Realty Corp.*, No. 09–11785(AJG), 2009 WL 2883050, at *2 (Bankr. S.D.N.Y. June 25, 2009); *In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 170 (Bankr. S.D.N.Y. 2004).

22. Section 1112(b)(4) provides non-exclusive examples of "cause" that establish grounds for conversion or dismissal, including the "(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief." 11 U.S.C. § 1112(b)(4)(I); *see also e.g. In re Westhampton Coachworks, Ltd.*, No. 09-73008-AST, 2010 WL 5348422, at *5 (Bankr. E.D.N.Y. Dec. 21, 2010) (holding that failure to pay post-petition taxes constitutes cause to convert the case); *In re McQuillen Place Co., LLC*, 609 B.R. 823, 831 (Bankr. N.D. Iowa 2019) (failure to pay post-petition property taxes is cause for conversion); *In re Thomas*, Case No. 19-19137, 2020 Bankr. LEXIS 3183 (Bankr. N.D. Ill. Nov. 10, 2020) (refusing to reconsider dismissal for failure to pay post-petition property taxes).

---

[4] Considering Court's decision to order the appointment of a Chapter 11 trustee, the Court has adjourned the hearing on the Claim Objection and the Rule 2004 Motion to allow the Chapter 11 trustee to take a position on the Claim Objection and Rule 2004 Motion.

23. "Cause" under section 1112(b) also includes "(4)(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). Courts have found substantial or continuing loss under section 1112(b) "when a debtor has a negative cash flow post-petition, and an inability to pay current expenses." *In re Red Bull Taxi Inc.*, No. 16-13153 (MKV), 2017 WL 1753234, at *2 (Bankr. S.D.N.Y. May 3, 2017) (citing *In re Adbrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003)). *See also In re E. 81st, LLC*, No. 13-13685 (SMB), 2014 WL 4548551, at *6 (Bankr. S.D.N.Y. Mar. 17, 2014) ("A negative cash flow is sufficient standing alone to establish continuing loss or diminution."); *In re Halal 4 U LLC*, No. 08-15216 (MG), 2010 WL 3810860, at *4 (Bankr. S.D.N.Y. Sept. 24, 2010) (finding cause to convert exists where a debtor owes substantial post-petition mortgage payments and has not evidenced payment of taxes). Additionally, "[i]t is not necessary that the losses to the estate be large. All that need be found is that the estate is suffering some diminution in value." *Id.* (citing *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988)). The term "rehabilitation" in section 1112(b)(4)(A) has been interpreted by courts to mean "to put back in good condition; re-establish on a firm, sound basis." *In re Red Bull Taxi* at *2, 2017 WL 1753234 (citing *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995)); *see also In re AdBrite Corp.*, 290 B.R. at 216. It signifies that the applicable debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met. *In re Rundlett*, 136 B.R. 376, 380 (Bankr. S.D.N.Y. 1992).

24. Once the movant has established "cause" under section 1112(b)(1) of the Bankruptcy Code, the burden shifts to the respondent to demonstrate that there are "unusual circumstances establishing that converting or dismissing the case is not in the best interests of

creditors and the estate." 11 U.S.C. § 1112(b)(2); 7 COLLIER ON BANKRUPTCY ¶ 1112.05[2] (16th ed. 2022). Additionally, the party opposing dismissal must demonstrate that:

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
>
>> (i) for which there exists a reasonable justification for the act or omission; and
>>
>> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

25. If cause is established and unusual circumstances are not found by the court, section 1112 requires conversion to Chapter 7 or dismissal of the case, "unless the court determines that appointment of a trustee or an examiner under section 1104(a) is in the best interests of creditors or the estate." 7 COLLIER ON BANKRUPTCY ¶ 1112.04[4] (16th ed. 2022); *see also* 11 U.S.C. § 1112(b)(1).

26. The Court finds that "cause" to convert or dismiss the Debtor's case exists under section 1112(b)(4)(I) of the Bankruptcy Code because of the Debtor's failure to pay the Post-Petition Real Estate Taxes. *See* 11 U.S.C. § 1112(b)(4)(I); (*see also* March MOR at 8, Part 6.) The Lender asserts that the Debtor has no available funds—and does not expect to generate enough revenue—to pay the overdue Post-Petition Real Estate Taxes. (Motion ¶ 40.)

27. The Debtor admits that it is unable to pay the Post-Petition Real Estate Taxes (Objection ¶¶ 1, 13; Hr'g Tr. Tr. at 31: 9–13[5]), but argues that the Lender's prior objection to its DIP Motion is to blame for its failure to pay. (*Id.* ¶¶ 1, 8, 13.) The Debtor's argument fails to establish (i) unusual circumstances excusing it from paying post-petition taxes, (ii) a reasonable justification for its failure, or (iii) that its failure will be cured within a reasonable time. 11 U.S.C. § 1112(b)(2)(B). Additionally, the Debtor has stated that it will need to file a motion to extend the exclusivity periods to file and solicit acceptances for a plan under section 1121. (*See* Hr'g Tr. at 7:22–23; *see also* Objection at 10 n.4.) Therefore, the Debtor fails to demonstrate that there is a reasonable likelihood that a plan will be confirmed within a reasonable time under section 1112(b)(2)(A). 11 U.S.C. 1112(b)(2)(A). The Court finds that "cause" exists under section 1112(b)(4)(I) of the Bankruptcy Code, which is a ground in and of itself to dismiss the case, convert the case to one under Chapter 7, or appoint a Chapter 11 trustee. 11 U.S.C. § 1112(b)(4)(I).

28. The Court also finds that the Lender has established that "cause" exists to convert or dismiss the Debtor's case under section 1112(b)(4)(A) of the Bankruptcy Code because the Debtor has suffered substantial and continuing losses and there is an absence of a reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A).

29. The Lender calculates that the Debtor suffers losses of at least $18,804 a month (or $225,648 per year) (Motion ¶ 27) and has incurred such significant losses every month since the Petition Date. (Reply ¶ 3 (citing MORs).) The Debtor concedes that it is suffering continuing operating losses (Objection ¶ 8; *see also* Hr'g Tr. 35:9–17, 41:11–13 ("[A]nd I'm not saying that once you figure in the tax payments, there isn't a loss . . . .")), but argues that (i) the losses are the

---

[5] "The fact of the matter is also, Your Honor, that the $8,900 while it's not a great deal of money, certainly for, you know a landlord, is enough to pay the minimal operating expenses of the building **excluding the taxes**, so utilities, insurance and those sorts of things." (Hr'g Tr. Tr. at 31: 9–13) (emphasis added).)

11

direct result of the Lender's refusal to consent to the use of cash collateral, (ii) the losses are "greatly exaggerated," and (iii) the losses "have not gotten significantly worse during the pendency of these cases." (Objection ¶¶ 8, 9.) The Court find the Debtor's arguments to be unavailing. The March MOR shows that the Debtor has suffered a cumulative operating loss of $350,037 in the three months after the Petition Date and has generated only $23,900 in income during this time (*see* MORs at 2, Part 4). *See In re E. 81st, LLC*, 2014 WL 4548551, at *6 ("A negative cash flow is sufficient standing alone to establish continuing loss or diminution.").

30. The Lender argues that there is no likelihood of rehabilitation because the Debtor has had more than 16 months to refinance the Loan but has failed to do so. (Motion ¶ 34.) Additionally, the Lender contends that the Debtor's Conditional Approval Letter from Sachem Capital fails to show a likelihood of rehabilitation because the maximum net available proceeds under the Sachem loan (if it is funded) is less than the Lender's debt that was due on April 1, 2022. (Reply ¶ 7.) The Debtor argues that there is a reasonable likelihood of rehabilitation because the Sachem loan is being negotiated and if it is approved it would be sufficient to pay off the Lender's Claim (after the Lender's Claim is reduced in connection with the Claim Objection). (Objection ¶¶ 9, 10; *see also* Hr'g Tr. at 40:10–13 ("I don't believe that [the Lender has] shown a complete absence of a rehabilitation because again if the [Lender's] claim is much less the Sachem loan definitely covers all of the things that we're talking about.").) The Debtor also contends that the business of the Debtor's commercial tenants has increased of late. (Objection ¶¶ 10 (citing Otway Declaration ¶ 8).)

31. The Court finds that the Lender has met its burden of showing an absence of a reasonable likelihood of rehabilitation to establish "cause" under section 1112(b)(4)(A) of the Bankruptcy Code. 11 U.S.C. § 1112(b)(4)(A). At the Hearing, the Debtor's counsel was unable

to state when it would conclude its discussions with Sachem on the Sachem loan (Hr'g Tr. at 9:2–6) and so there is no indication whether the Sachem loan will ultimately be funded. Further, even if the Sachem loan is funded, the loan proceeds are unlikely to provide enough funds to cover the amount of the Lender's Claim and to cover the operating losses.

32. Since "cause" exists under section 1112(b)(1), the Court must either convert the Debtor's case to a case under Chapter 7 or dismiss the Debtor's case, unless the Court determines that the appointment of a Chapter 11 trustee is in the best interests of the creditors and the estate. 11 U.S.C. § 1112(b)(1). Here, the Court finds that it is in the best interests of the Debtor's creditors and estate to order the appointment of a Chapter 11 trustee. The Court expects that a Chapter 11 Trustee will market the Debtor's Property through a broker in an orderly Chapter 11 sale process. Such sale process is the most likely to achieve the highest and best value for the Property for the benefit of the Debtor's creditors and the estate. Further, the United States Trustee agrees that the appointment of a Chapter 11 trustee would be in the best interest of the creditors at this time.[6] (Hr'g Tr. 42:6–43:1–2.)

. . . .

. . . .

. . . .

. . . .

. . . .

---

[6] It appears that the trustee may not have sufficient unencumbered cash to operate the property while the trustee seeks to sell it in an orderly fashion; therefore, the trustee may need to reach an agreement with the Lender to use cash collateral and, possibly, obtain additional post-petition financing. If the trustee is unsuccessful in obtaining sufficient funds to operate the business, the trustee may conclude it is necessary to file a motion to convert the case to a case under Chapter 7.

For the reasons explained above, the Court **ORDERS** as follows:

A. The Motion is **GRANTED** to the extent provided herein; and
B. The United States Trustee is directed to appoint a Chapter 11 trustee, with all the rights, powers and duties authorized under 11 U.S.C. §§ 1104 and 1106.

**IT IS SO ORDERED.**

Dated:  May 17, 2022
 New York, New York

/s/ **Martin Glenn**
MARTIN GLENN
Chief United States Bankruptcy Judge
