# EXHIBIT 1

# COMMERCIAL SUBLEASE AGREEMENT

THIS SUBLEASE AGREEMENT is entered into on _November 8_, 20_19_ by and between _Scherbs Place Inc._ ("SUBLESSOR"), with an address of _80 St Marks Place_ _NY NY 10003_ and _Theatre 80 LLC_, ("SUBTENANT"), currently located at _80 St Marks Pl NY NY 10003_ (the "Parties").

FOR VALUABLE CONSIDERATION, the Parties agree to the following terms and conditions.

1. **Premises**. Sublessor hereby subleases to Sublessee and Sublessee hereby subleases from Sublessor for the term specified below, and upon all of the conditions set forth herein, that certain real property, including all improvements thereon, commonly known by the street address of _80 St Mark Place_, located in the County of _New York_, State of _New York_, and generally described as _auditorium, cellar & backstage_ (the "Premises").

2. **Term**. The term of this Sublease shall be for _15 years_ commencing on _Nov 8_, 20_19_ and ending on _November 7_, 20_19_ unless sooner terminated pursuant to any provision hereof. Sublessor agrees to use its best commercially reasonable efforts to deliver possession of the Premises by the commencement date. If, despite said efforts, Sublessor is unable to deliver possession as agreed, the rights and obligations of Sublessor and Sublessee shall be as set forth in the Master Lease and in Paragraph 7 of this Sublease.

3. **Base Rent**. Sublessee shall pay to Sublessor as Base Rent for the Premises equal monthly payments of $_7,000_ in advance, on the _8th_ day of each month of the term hereof. Sublessee shall pay Sublessor upon the execution hereof $_7,000_ as Base Rent for the period _Nov 8th 2019_ through _Dec. 7 2019_. Base Rent which is less than one month for any period during the term hereof shall be calculated at a pro rata portion of the monthly installment.

4. **Rent Defined**. All monetary obligations of Sublessee to Sublessor under the terms of this Sublease (except for the Security Deposit) are deemed to be rent ("Rent"). Rent shall be payable in lawful money of the United States to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may designate in writing.

5. **Security Deposit**. Sublessee shall deposit with Sublessor upon execution hereof $_____ as security for Sublessee's faithful performance of Sublessee's obligations hereunder. The rights and obligations of Sublessor and Sublessee as to said Security Deposit shall be as set forth in the Master Lease (as modified by Paragraph 7 of this Sublease).

6. **Use**.

    (a) **Agreed Use**. The Premises shall be used and occupied only for _Theatre use, performances, community events, films or any other that comes under theater use_ and for no other purpose.

    (b) **Compliance**. Sublessor warrants that the improvements on the Premises comply with all applicable covenants or restrictions of record and applicable building codes, regulations and ordinances in effect on the commencement date. Said warranty does not apply to the use to which Sublessee will put the Premises or to any alterations or utility installations made or to be made by Sublessee. NOTE: Sublessee is responsible for determining whether or not the zoning is appropriate for its intended use, and acknowledges that past uses of the Premises may no longer be allowed. If the Premises do not comply with said warranty, or in the event that the applicable requirements are hereafter changed, the rights and obligations of Sublessor and Sublessee shall be as provided in the Master Lease (as modified in Paragraph 7 of this Sublease).

    (c) **Acceptance of Premises and Lessee**. Sublessee acknowledges that (i) it has been advised to satisfy itself with respect to the condition of the Premises (including but not limited to the electrical, HVAC and fire sprinkler systems, security, environmental aspects, and compliance with all applicable requirements) and their suitability for Sublessee's intended use; (ii) Sublessee has made such investigation as it deems necessary with reference to such matters and assumes all responsibility therefor as the same relate to its occupancy of the Premises; and (iii) neither Sublessor, Sublessor's agents, nor any broker has made any oral or written representations or warranties with respect to said matters other than as set forth in this Sublease. In addition, Sublessor acknowledges that it is Sublessor's sole

Page 1

responsibility to investigate the financial capability and/or suitability of all proposed tenants.

7. **Master Lease**.

(a) Sublessor is the lessee of the Premises by virtue of a lease, (the "Master Lease"), a copy of which is attached hereto, wherein _Scheibs Place INC_ is the lessor, ("Master Lessor").

(b) This Sublease is and shall at all times be subject and subordinate to the Master Lease.

(c) The terms, conditions and respective obligations of Sublessor and Sublessee to each other under this Sublease shall be the terms and conditions of the Master Lease except for those provisions of the Master Lease which are directly contradicted by this Sublease in which event the terms of this Sublease shall control over the Master Lease. Therefore, for the purposes of this Sublease, wherever in the Master Lease the word "Lessor" is used it shall be deemed to mean the Sublessor herein and wherever in the Master Lease the word "Lessee" is used it shall be deemed to mean the Sublessee herein.

(d) During the term of this Sublease and for all periods subsequent for obligations which have arisen prior to the termination of this Sublease, Sublessee does hereby expressly assume and agree to perform and comply with, for the benefit of Sublessor and Master Lessor, each and every obligation of Sublessor under the Master Lease (the "Sublessee's Assumed Obligations"). The obligations that Sublessee has not assumed under this Paragraph 7 are hereinafter referred to as the "Sublessor's Remaining Obligations".

(e) Sublessee shall hold Sublessor free and harmless from all liability, judgments, costs, damages, claims or demands, including reasonable attorneys' fees, arising out of Sublessee's failure to comply with or perform Sublessee's Assumed Obligations.

(f) Sublessor agrees to maintain the Master Lease during the entire term of this Sublease, subject however, to any earlier termination of the Master Lease without the fault of the Sublessor, and to comply with or perform Sublessor's Remaining Obligations and to hold Sublessee free and harmless from all liability, judgments, costs, damages, claims or demands arising out of Sublessor's failure to comply with or perform Sublessor's Remaining Obligations.

(g) Sublessor represents to Sublessee that the Master Lease is in full force and effect and that no default exists on the part of any party to the Master Lease.

8. **Assignment of Sublease and Default**.

(a) Sublessor hereby assigns and transfers to Master Lessor the Sublessor's interest in this Sublease, subject to the provisions of this Paragraph 8.

(b) Master Lessor, by executing this document, agrees that until a default occurs in the performance of Sublessor's Obligations under the Master Lease, that Sublessor may receive, collect and enjoy the Rent accruing under this Sublease. However, if Sublessor defaults in the performance of its obligations to Master Lessor, then Master Lessor may, at its option, receive and collect, directly from Sublessee, all Rent owing and to be owed under this Sublease. Master Lessor shall not, by reason of this assignment of the Sublease nor by reason of the collection of the Rent from Sublessee, be deemed liable to Sublessee for any failure of Sublessor to perform and comply with Sublessor's Remaining Obligations.

(c) Sublessor hereby irrevocably authorizes and directs Sublessee upon receipt of any written notice from the Master Lessor stating that a default exists in the performance of Sublessor's obligations under the Master Lease, to pay to Master Lessor the Rent due and to become due under the Sublease. Sublessor agrees that Sublessee shall have the right to rely upon any such statement and request from Master Lessor, and that Sublessee shall pay such Rent to Master Lessor without any obligation or right to inquire as to whether such default exists and notwithstanding any notice from or claim from Sublessor to the contrary and Sublessor shall have no right or claim against Sublessee for any such Rent so paid by Sublessee.

(d) No changes or modifications shall be made to this Sublease without the consent of Master Lessor.

9. **Consent of Master Lessor**.

(a) In the event that the Master Lease requires that Sublessor obtain the consent of Master Lessor to any subletting by Sublessor, then this Sublease shall not be effective unless, within ten (10) days of the date hereof, Master Lessor signs this Sublease thereby giving its consent to this subletting.

(b) In the event that the obligations of the Sublessor under the Master Lease have been guaranteed by third Parties, then neither this Sublease nor the Master Lessor's consent shall be effective unless, within ten (10) days of the date hereof, said guarantors sign this Sublease thereby giving their consent to this Sublease.

(c) In the event that Master Lessor does give such consent then:

(i) Such consent shall not release Sublessor of its obligations or alter the primary liability of Sublessor to pay the Rent and perform and comply with all of the obligations of Sublessor to be performed under the Master Lease.

(ii) The acceptance of Rent by Master Lessor from Sublessee or anyone else liable under the Master Lease shall not be deemed a waiver by Master Lessor of any provisions of the Master Lease.

(iii) The consent to this Sublease shall not constitute a consent to any subsequent subletting or assignment.

(iv) In the event of any default of Sublessor under the Master Lease, Master Lessor may proceed directly against Sublessor, any guarantors or anyone else liable under the Master Lease or this Sublease without first exhausting Master Lessor's remedies against any other person or entity liable thereon to Master Lessor.

(v) Master Lessor may consent to subsequent sublettings and assignments of the Master Lease or this Sublease or any amendments or modifications thereto without notifying Sublessor or anyone else liable under the Master Lease and without obtaining their consent and such action shall not relieve such persons from liability.

(vi) In the event that Sublessor should default in its obligations under the Master Lease, then Master Lessor, at its option and without being obligated to do so, may require Sublessee to attorn to Master Lessor in which event Master Lessor shall undertake the obligations of Sublessor under this Sublease from the time of the exercise of said option to termination of this Sublease but Master Lessor shall not be liable for any prepaid Rent nor any Security Deposit paid by Sublessee, nor shall Master Lessor be liable for any other defaults of the Sublessor under the Sublease.

(d) The signatures of the Master Lessor and any Guarantors of Sublessor at the end of this document shall constitute their consent to the terms of this Sublease.

(e) Master Lessor acknowledges that, to the best of Master Lessor's knowledge, no default presently exists under the Master Lease of obligations to be performed by Sublessor and that the Master Lease is in full force and effect.

(f) In the event that Sublessor defaults under its obligations to be performed under the Master Lease by Sublessor, Master Lessor agrees to deliver to Sublessee a copy of any such notice of default. Sublessee shall have the right to cure any default of Sublessor described in any notice within ten (10) days after such service of such notice of default on Sublessee. If such default is cured by Sublessee, then Sublessee shall have the right of reimbursement and offset from and against Sublessor.

10. Broker's Fee.

(a) Upon execution hereof by all Parties, Sublessor shall pay to ___None___ _____ a licensed real estate broker ("Broker") a fee as set forth in a separate agreement between Sublessor and Broker, or in the event there is no such separate agreement, the sum of $_____ for brokerage services rendered by Broker to Sublessor in this transaction.

(b) Sublessor agrees that if Sublessee exercises any option or right of first refusal as granted by Sublessor herein, or any option or right substantially similar thereto, either to extend the term of this Sublease, to renew this Sublease, to purchase the Premises, or to lease or purchase adjacent property which Sublessor may own or in which Sublessor has an interest, then Sublessor shall pay to Broker a fee in accordance with the schedule of Broker in effect at the time of the execution of this Sublease. Notwithstanding the foregoing, Sublessor's obligation under this Paragraph 10(b) is limited to a transaction in which Sublessor is acting as a Sublessor, lessor or seller.

Page 3

(c) Master Lessor agrees that if Sublessee should exercise any option or right of first refusal granted to Sublessee by Master Lessor in connection with this Sublease, or any option or right substantially similar thereto, either to extend or renew the Master Lease, to purchase the Premises or any part thereof, or to lease or purchase adjacent property which Master Lessor may own or in which Master Lessor has an interest, or if Broker is the procuring cause of any other lease or sale entered into between Sublessee and Master Lessor pertaining to the Premises, any part thereof, or any adjacent property which Master Lessor owns or in which it has an interest, then as to any of said transactions, Master Lessor shall pay to Broker a fee, in cash, in accordance with the schedule of Broker in effect at the time of the execution of this Sublease.

(d) Any fee due from Sublessor or Master Lessor hereunder shall be due and payable upon the exercise of any option to extend or renew, upon the execution of any new lease, or, in the event of a purchase, at the close of escrow.

(e) Any transferee of Sublessor's interest in this Sublease, or of Master Lessor's interest in the Master Lease, by accepting an assignment thereof, shall be deemed to have assumed the respective obligations of Sublessor or Master Lessor under this Paragraph 10. Broker shall be deemed to be a third-party beneficiary of this Paragraph.

11. **Attorney's Fees.** If any party or the Broker named herein brings an action to enforce the terms hereof or to declare rights hereunder, the prevailing party in any such action, on trial and appeal, shall be entitled to his reasonable attorney's fees to be paid by the losing party as fixed by the Court.

12. **Additional Provisions.** _____

13. **Governing Law.** This Sublease shall be governed by the laws of the State of _____ Any disputes hereunder will be heard in the appropriate state and federal courts located in the County of _____

Executed at: _80 St Marks Pl, NYNY 10003_  
On: _November 8, 2020_  
Address: _80 St Mark Pl_  
_NY NY 10003_  

Sublessor: _Schribs Place Inc._  
By: _[signature]_  
Printed Name: _Lawrence Lenan Otway_  
Title: _Owner_  

Executed at: _80 St Marks Pl NYNY 10003_  
On: _November 8, 2020_  
Address: _80 St Marks Pl_  
_NYNY, 10003_  

Sublessee: _Theatre 80 LLC_  
By: _[signature]_  
Printed Name: _Lawrence Lenan Otway_  
Title: _Owner_  

permission granted by  
78-80 St Marks Place LLC  
80 St Marks Place  
NYNY 10003  
By _[signature]_  
Lawrence Lenan Otway  
Nov 8, 2020  

Form Made Fillable by eForms

Page 4

# COMMERCIAL LEASE AGREEMENT

This Lease Agreement made the 8th day of November, 2019, by and between:

Lessor: 78 St Marks Place LLC [name of lessor], of 80 St Marks Pl NY NY 10003 [mailing address] hereinafter referred to as "Lessor", and

Lessee: Scheibs Place INC [name of lessee], of 80 St Marks Place NY NY 10003 [mailing address] hereinafter referred to as "Lessee", and collectively referred to herein as the "Parties", agree as follows:

1. **DESCRIPTION OF LEASED PREMISES**: The Lessor agrees to lease to the Lessee the following described 4875 square feet (SF) of Tavern [type of space] located at 80 St Marks Place NY NY 10003 [street address], State of NY.

Additional Description: Includes storage space in cellar.

Hereinafter known as the "Premises".

2. **USE OF LEASED PREMISES**: The Lessor is leasing the Premises to the Lessee and the Lessee is hereby agreeing to lease the Premises for the following use and purpose: Tavern

Any change in use or purpose the Premises other than as described above shall be upon prior written consent of Lessor only.

3. **TERM OF LEASE**: The term of this Lease shall be for a period of 15 year(s) 0 month(s) commencing on the 8th day of November, 2019 and expiring at Midnight on the 7th day of November, 2034. ("Initial Term")

4. **BASE RENT**: The net monthly payment shall be Fourteen Thousand dollars ($14,000), payable monthly with the first payment due upon the commencement of the Lease and each monthly installment payable thereafter on the 4th day of each month. Said net monthly payment is hereafter referred to as the "Base Rent". Rent for any period during the term hereon, which is for less than 1 month shall be a pro-rata portion of the monthly rent.

5. **OPTION TO RENEW**: (check one)

    ☐ - Lessee may not renew the Lease.

    ☒ - Lessee may have the right to renew the Lease with a total of 3 renewal period(s) with each term being 5 year(s) 0 month(s) which may be exercised by giving written notice to Lessor no less than 60 days prior to the expiration of the Lease or renewal period.

Page 1 of 10

Rent for each option period shall: (check one)

☐ - Not increase.

☒ - Increase as calculated by multiplying the Base Rent by the annual change in the Consumer Price Index (CPI) published by the Bureau of Labor Statistics by the most recent publication to the option period start date.

☐ - Increase by ____%

☐ - Increase by _____ dollars ($_____)

6. **EXPENSES**: [Check and Initial next to selection)

☒ - **GROSS**. Tenant's Initials _____ Landlord's Initials _____

It is the intention of the Parties that this Lease be considered a "Gross Lease" and as such, the Base Rent is the entirety of the monthly rent. Therefore, the Lessee is not obligated to pay any additional expenses which includes utilities, real estate taxes, insurance (other than on the Lessee's personal property), charges or expenses of any nature whatsoever in connection with the ownership and operation of the Premises. The Lessor shall be obligated to maintain the general exterior structure of the Premises, in addition, shall maintain all major systems such as the heating, plumbing, and electrical. The parking area shall be maintained by the Lessor including the removal of any snow or environmental hazards as well as the grounds and lands surrounding the Premises. The Lessor shall maintain at their expense casualty insurance for the Premises against loss by fire which may or may not include any extended coverage. The Lessee will provide and maintain personal liability and property damage insurance as a lessee, at least to the limits of One Million Dollars ($1,000,000.00), that will designate the Lessor as an "also named insured", and shall provide the Lessor with a copy of such insurance certification or policy prior to the effective date of this Lease.

☐ - **MODIFIED GROSS**. Tenant's Initials _____ Landlord's Initials _____

It is the intention of the Parties that this Lease shall be considered a "Modified Gross Lease".

In addition to the Base Rent, the Lessee shall be obligated to pay the following monthly expenses:

_____
_____
_____

Lessor shall pay the following monthly expenses:

_____
_____
_____

☐ - **TRIPLE NET (NNN)**. Tenant's Initials _____ Landlord's Initials _____

It is the intention of the Parties that this Lease shall be considered a "Triple Net Lease".

    I. Operating Expenses. The Lessor shall have no obligation to provide any services, perform any acts, or pay expenses, charges, obligations or costs of any kind whatsoever with respect to the Premises. The Lessee hereby agrees to pay one-hundred percent (100%) of any and all Operating Expenses as hereafter defined for the entire term of the Lease and any extensions thereof in accordance with specific provisions hereinafter set forth. The term "Operating Expenses" shall include all costs to the Lessor of operating and maintaining the Premises, and shall include, without limitation, real estate and personal property taxes and assessments, management fee(s), heating, air conditioning, HVAC, electricity, water, waste disposal, sewage, operating materials and supplies, service agreements and charges, lawn care, snow removal, restriping, repairs, repaving, cleaning and custodial, security, insurance, the cost of contesting the validity or applicability of any governmental acts which may affect operating expenses, and all other direct operating costs of operating and maintaining the Premises and related parking areas, unless expressly excluded from operating expenses.

    II. Taxes. Lessee shall pay, during the term of this Lease, the real estate taxes including any special taxes or assessments (collectively, the "taxes") attributable to the Premises and accruing during such term. Lessee, at Lessor's option, shall pay to Lessor said taxes on a monthly basis, based on one-twelfth (1/12) of the estimated annual amount for taxes. Taxes for any fractional calendar year during the term hereof shall be prorated. In the event the Lessee does not make any tax payment required hereunder, Lessee shall be in default of this Lease.

    III. Insurance. Lessee shall maintain, at all times during the Term of this Lease, comprehensive general liability insurance in an insurance company licensed to do business in the State in which the Premises are located and that is satisfactory to Lessor, properly protecting and indemnifying Lessor with single limit coverage of not less than _____ dollars ($_____) for injury to or _____ dollars ($_____) death of persons and _____ dollars ($_____) for property damage. During the Term of this Lease, Lessee shall furnish the Lessor with certificate(s) of insurance, in a form acceptable to Lessor, covering such insurance so maintained by Lessee and naming Lessor and Lessor's mortgagees, if any, as additional insured.

7.   **SECURITY DEPOSIT**: In addition to the above, a deposit in the amount of _____ dollars ($_____), shall be due and payable in advance or at the signing of this Lease, hereinafter referred to as the "Security Deposit", and shall be held in escrow by the Lessor in a separate, interest-bearing savings account as security for the faithful performance of the terms and conditions of the Lease. The Security Deposit may not be used to pay the last month's rent unless written permission is granted by the Lessor.

8.   **LEASEHOLD IMPROVEMENTS**: The Lessee agrees that no leasehold improvements, alterations or changes of any nature, (except for those listed on any attached addenda) shall be made to the leasehold premises or the exterior of the building without first obtaining the consent of the Lessor in writing, which consent shall not be unreasonably withheld, and thereafter, any and all leasehold improvements made to the Premises which become affixed or attached to the leasehold Premises shall remain the property of the Lessor at the expiration or termination of this Lease Agreement. Furthermore, any leasehold improvements shall be made only in accordance with applicable federal, state or local codes, ordinances or regulations, having due regard for the type of construction of the building housing the subject leasehold Premises. If the Lessee makes any improvements to the Premises the Lessee shall be responsible payment, except the following _____

Nothing in the Lease shall be construed to authorize the Lessee or any other person acting for the Lessee to encumber the rents of the Premises or the interest of the Lessee in the Premises or any person under and through whom the Lessee has acquired its interest in the Premises with a mechanic's lien or any other type of encumbrance. Under no circumstance shall the Lessee be construed to be the agent, employee or representative of Lessor. In the event a lien is placed against the Premises, through actions of the Lessee, Lessee will promptly pay the same or bond against the same and take steps immediately to have such lien removed. If the Lessee fails to have the Lien removed, the Lessor shall take steps to remove the lien and the Lessee shall pay Lessor for all expenses related to the Lien and removal thereof and shall be in default of this Lease.

9.   **LICENSES AND PERMITS**: A copy of any and all local, state or federal permits acquired by the Lessee which are required for the use of the Premises shall be kept on site at all times and shall be readily accessible and produced to the Lessor and/or their agents or any local, state, or federal officials upon demand.

10.  **OBLIGATIONS OF LESSEE**: The Lessee shall be primarily responsible whenever needed for the maintenance and general pickup of the entranceway leading into the Premises, so that this is kept in a neat, safe and presentable condition. The Lessee shall also be responsible for all minor repairs and maintenance of the leasehold Premises, particularly those items which need immediate attention and which the Lessees, or their employees, can do and perform on their own, including but not limited to, the replacement of light bulbs, as well as the normal repair and cleaning of windows, cleaning and clearing of toilets, etc., and the Lessee shall properly maintain the Premises in a good, safe, and clean condition. The Lessee shall properly and promptly

remove all rubbish and hazardous wastes and see that the same are properly disposed of according to all local, state or federal laws, rules regulations or ordinances.

In the event the structure of the Premises is damaged as a result of any neglect or negligence of Lessee, their employees, agents, business invitees, or any independent contractors serving the Lessee or in any way as a result of Lessee's use and occupancy of the Premises, then the Lessee shall be primarily responsible for seeing that the proper claims are placed with the Lessee's insurance company, or the damaging party's insurance company, and shall furthermore be responsible for seeing that the building is safeguarded with respect to said damage and that all proper notices with respect to said damage, are made in a timely fashion, including notice to the Lessor, and the party or parties causing said damage. Any damage that is not covered by an insurance company will be the liability of the Lessee.

The Lessee shall, during the term of this Lease, and in the renewal thereof, at its sole expense, keep the interior of the Premises in as good a condition and repair as it is at the date of this Lease, reasonable wear and use excepted. This obligation would include the obligation to replace any plate glass damaged as a result of the neglect or acts of Lessee or her guests or invitees. Furthermore, the Lessee shall not knowingly commit nor permit to be committed any act or thing contrary to the rules and regulations prescribed from time to time by any federal, state or local authorities and shall expressly not be allowed to keep or maintain any hazardous waste materials or contaminates on the Premises. Lessee shall also be responsible for the cost, if any, which would be incurred to bring her contemplated operation and business activity into compliance with any law or regulation of a federal, state or local authority.

11. **INSURANCE:** In the event the Lessee shall fail to obtain insurance required hereunder and fails to maintain the same in force continuously during the term, Lessor may, but shall not be required to, obtain the same and charge the Lessee for same as additional rent. Furthermore, Lessee agrees not to keep upon the Premises any articles or goods which may be prohibited by the standard form of fire insurance policy, and in the event the insurance rates applicable to fire and extended coverage covering the Premises shall be increased by reason of any use of the Premises made by Lessee, then Lessee shall pay to Lessor, upon demand, such increase in insurance premium as shall be caused by said use or Lessee's proportionate share of any such increase.

12. **SUBLET/ASSIGNMENT:** The Lessee may not transfer or assign this Lease, or any right or interest hereunder or sublet said leased Premises or any part thereof without first obtaining the prior written consent and approval of the Lessor.

13. **DAMAGE TO LEASED PREMISES:** In the event the building housing the Premises shall be destroyed or damaged as a result of any fire or other casualty which is not the result of the intentional acts or neglect of Lessee and which precludes or adversely affects the Lessee's occupancy of the Premises, then in every such cause, the rent herein set forth shall be abated or adjusted according to the extent to which the leased Premises have been rendered unfit for use and occupation by the Lessee and until the demised Premises have been put in a condition at the expense of the Lessor, at least to the extent of the value and as nearly as possible to the condition of the Premises existing immediately prior to such damage. It is understood, however, in the



event of total or substantial destruction to the Premises that in no event shall the Lessor's obligation to restore, replace or rebuild exceed an amount equal to the sum of the insurance proceeds available for reconstruction with respect to said damage.

14. **DEFAULT AND POSSESSION**: In the event that the Lessee shall fail to pay said rent, and expenses as set forth herein, or any part thereof, when the same are due and payable, or shall otherwise be in default of any other terms of said Lease for a period of more than 15 days, after receiving notice of said default, then the parties hereto expressly agree and covenant that the Lessor may declare the Lease terminated and may immediately re-enter said Premises and take possession of the same together with any of Lessee's personal property, equipment or fixtures left on the Premises which items may be held by the Lessor as security for the Lessee's eventual payment and/or satisfaction of rental defaults or other defaults of Lessee under the Lease. It is further agreed, that if the Lessee is in default, that the Lessor shall be entitled to take any and all action to protect its interest in the personal property and equipment, to prevent the unauthorized removal of said property or equipment which threatened action would be deemed to constitute irreparable harm and injury to the Lessor in violation of its security interest in said items of personal property. Furthermore, in the event of default, the Lessor may expressly undertake all reasonable preparations and efforts to release the Premises including, but not limited to, the removal of all inventory, equipment or leasehold improvements of the Lessee's, at the Lessee's expense, without the need to first procure an order of any court to do so, although obligated in the interim to undertake reasonable steps and procedures to safeguard the value of Lessee's property, including the storage of the same, under reasonable terms and conditions at Lessee's expense, and, in addition, it is understood that the Lessor may sue the Lessee for any damages or past rents due and owing and may undertake all and additional legal remedies then available.

In the event any legal action has to be instituted to enforce any terms or provisions under this Lease, then the prevailing party in said action shall be entitled to recover a reasonable attorney's fee in addition to all costs of said action.

Rent which is in default for more than __90__ days after due date shall accrue a payment penalty of one of the following: (check one)

☐ - Interest at a rate of _____ percent (____%) per annum on a daily basis until the amount is paid in full.

☒ - Late fee of __Three Hundred__ dollars ($__300.00__) per day until the amount is paid in full.

In this regard, all delinquent rental payments made shall be applied first toward interest due and the remaining toward delinquent rental payments.

15. **INDEMNIFICATION**: The Lessee hereby covenants and agrees to indemnify, defend and hold the Lessor harmless from any and all claims or liabilities which may arise from any cause whatsoever as a result of Lessee's use and occupancy of the Premises, and further shall indemnify the Lessor for any losses which the Lessor may suffer in connection with the Lessee's use and occupancy or care, custody and control



of the Premises. The Lessee also hereby covenants and agrees to indemnify and hold harmless the Lessor from any and all claims or liabilities which may arise from any latent defects in the subject Premises that the Lessor is not aware of at the signing of the lease or at any time during the lease term.

16. **BANKRUPTCY - INSOLVENCY:** The Lessee agrees that in the event all or a substantial portion of the Lessee's assets are placed in the hands of a receiver or a Trustee, and such status continues for a period of 30 days, or should the Lessee make an assignment for the benefit of creditors or be adjudicated bankrupt; or should the Lessee institute any proceedings under the bankruptcy act or any amendment thereto, then such Lease or interest in and to the leased Premises shall not become an asset in any such proceedings and, in such event, and in addition to any and all other remedies of the Lessor hereunder or by law provided, it shall be lawful for the Lessor to declare the term hereof ended and to re-enter the leased land and take possession thereof and all improvements thereon and to remove all persons therefrom and the Lessee shall have no further claim thereon.

17. **SUBORDINATION AND ATTORNMENT:** Upon request of the Lessor, Lessee will subordinate its rights hereunder to the lien of any mortgage now or hereafter in force against the property or any portion thereof, and to all advances made or hereafter to be made upon the security thereof, and to any ground or underlying lease of the property provided, however, that in such case the holder of such mortgage, or the Lessor under such Lease shall agree that this Lease shall not be divested or in any way affected by foreclosure, or other default proceedings under said mortgage, obligation secured thereby, or Lease, so long as the Lessee shall not be in default under the terms of this Lease. Lessee agrees that this Lease shall remain in full force and effect notwithstanding any such default proceedings under said mortgage or obligation secured thereby.
Lessee shall, in the event of the sale or assignment of Lessor's interest in the building of which the Premises form a part, or in the event of any proceedings brought for the foreclosure of, or in the event of exercise of the power of sale under any mortgage made by Lessor covering the Premises, attorn to the purchaser and recognize such purchaser as Lessor under this Lease.

18. **MISCELLANEOUS TERMS:**

   I. Usage by Lessee: Lessee shall comply with all rules, regulations and laws of any governmental authority with respect to use and occupancy. Lessee shall not conduct or permit to be conducted upon the Premises any business or permit any act which is contrary to or in violation of any law, rules or regulations and requirements that may be imposed by any authority or any insurance company with which the Premises is insured, nor will the Lessee allow the Premises to be used in any way which will invalidate or be in conflict with any insurance policies applicable to the building. In no event shall explosives or extra hazardous materials be taken onto or retained on the Premises. Furthermore, Lessee shall not install or use any equipment that will cause undue interference with the peaceable and quiet enjoyment of the Premises by other tenants of the building.

II. Signs: Lessee shall not place on any exterior door, wall or window of the Premises any sign or advertising matter without Lessor's prior written consent and the approval of the _____ [Municipality]. Thereafter, Lessee agrees to maintain such sign or advertising matter as first approved by Lessor in good condition and repair. Furthermore, Lessee shall conform to any uniform reasonable sign plan or policy that the Lessor may introduce with respect to the building. Upon vacating the Premises, Lessee agrees to remove all signs and to repair all damages caused or resulting from such removal.

III. Pets: Unless otherwise stated in this Lease Agreement, the only pets that shall be allowed on the Premises are those needed legally due to a disability or handicap.

IV. Condition of Premises/Inspection by Lessee: The Lessee has had the opportunity to inspect the Premises and acknowledges with its signature on this lease that the Premises are in good condition and comply in all respects with the requirements of this Lease. Furthermore, the Lessor makes no representation or warranty with respect to the condition of the Premises or its fitness or availability for any particular use, and the Lessor shall not be liable for any latent or patent defect therein. Furthermore, the Lessee represents that Lessee has inspected the Premises and is leasing and will take possession of the Premises with all current fixtures present in their "as is" condition as of the date hereof.

V. Right of Entry: It is agreed and understood that the Lessor and its agents shall have the complete and unencumbered right of entry to the Premises at any time or times for purposes of inspecting or showing the Premises and for the purpose of making any necessary repairs to the building or equipment as may be required of the Lessor under the terms of this Lease or as may be deemed necessary with respect to the inspection, maintenance or repair of the building.

19.   **ESTOPPEL CERTIFICATE:** Lessee at any time and from time to time, upon at least ten (10) days prior notice by Lessor, shall execute, acknowledge and deliver to Lessor, and/or to any other person, firm or corporation specified by Lessor, a statement certifying that the Lease is unmodified and in full force and effect, or if the Lease has been modified, then that the same is in full force and effect except as modified and stating the modifications, stating the dates to which the fixed rent and additional rent have been paid, and stating whether or not there exists any default by Lessor under this Lease and, if so, specifying each such default.

20.   **HOLDOVER:** Should Lessee remain in possession of the Premises after the cancellation, expiration or sooner termination of the Lease, or any renewal thereof, without the execution of a new Lease or addendum, such holding over in the absence of a written agreement to the contrary shall be deemed, if Lessor so elects, to have created and be construed to be a tenancy from month to month, terminable upon thirty (30) days' notice by either party.

21.   **WAIVER:** Waiver by Lessor of a default under this Lease shall not constitute a waiver of a subsequent default of any nature.

22. **GOVERNING LAW:** This Lease shall be governed by the laws of the State of _New York_.

23. **NOTICES:** Payments and notices shall be addressed to the following:

Lessor   78-80 St Marks Place LLC
         78-80 St Marks Pl, NY NY 10003

Lessee   Scheibs Place Inc
         80 St Marks Place
         New York, NY 10004

24. **AMENDMENT:** No amendment of this Lease shall be effective unless reduced to writing and subscribed by the parties with all the formality of the original.

25. **BINDING EFFECT:** This Lease and any amendments thereto shall be binding upon the Lessor and the Lessees and/or their respective successors, heirs, assigns, executors and administrators.

IN WITNESS WHEREOF, the parties hereto set their hands and seal this _8th_ day of _November_, 20_19_.

Lessee's Signature _[signed]_   Printed Name  Lawrence Loncan Otway

Lessor's Signature _[signed]_   Printed Name  Lawrence Loncan Otway