**LaMONICA HERBST & MANISCALCO, LLP**          **Hearing Date: March 29, 2023 at 10:00 a.m.**
*Counsel to Marianne T. O'Toole, Esq., as Trustee*          **Objections Due: March 22, 2023 by 5:00 p.m.**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                        Chapter 7

78-80 ST. MARKS PLACE, LLC,                                   Case No.: 21-12139 (MG)

          Debtor.
------------------------------------------------------------x

### NOTICE OF HEARING ON TRUSTEE'S MOTION FOR: (I) AN ORDER: (A) AUTHORIZING THE SALE OF THE DEBTOR'S PROPERTY FREE AND CLEAR OF ANY ALLEGED LEASES AND/OR ANY POSSESSORY RIGHTS OF LAWRENCE V. OTWAY, A/K/A LAWRENCE LORCAN OTWAY, A/K/A LORCAN OTWAY, EUGENIE OTWAY A/K/A EUGENIE GILMORE-OTWAY, A/K/A EUGENIE GILMORE, AND THEIR AFFILIATES AND/OR FAMILY MEMBERS; (B) SCHEDULING A PUBLIC AUCTION SALE OF THE DEBTOR'S REAL PROPERTY; (C) APPROVING TERMS AND CONDITIONS OF SALE TO GOVERN THE PUBLIC AUCTION SALE OF THE DEBTOR'S REAL PROPERTY; (D) APPROVING THE FORM AND MANNER OF NOTICE OF THE PUBLIC AUCTION SALE OF THE DEBTOR'S REAL PROPERTY; (E) SCHEDULING A HEARING TO CONFIRM THE RESULTS OF THE PUBLIC AUCTION SALE; AND (F) WAIVING THE 14-DAY STAY PERIOD; AND (II) AN ORDER: (A) APPROVING THE SALE OF THE DEBTOR'S REAL PROPERTY; AND (B) GRANTING RELATED RELIEF

      **PLEASE TAKE NOTICE** that, on **March 29, 2023 at 10:00 a.m.**, or as soon thereafter

as counsel may be heard, a hearing ("Hearing") shall be held before the Honorable Martin Glenn,

Chief United States Bankruptcy Judge, on that portion of the motion ("Sale Motion") of Marianne

T. O'Toole, Esq., solely in her capacity as Chapter 7 Trustee ("Trustee") of the estate of 78-80 St.

Marks Place, LLC, seeking entry of an Order: (i) authorizing the sale of the Debtor's real property

and improvements located at 78-80 St. Marks Place, New York, New York 10003 ("Property")

free and clear of any alleged leases and/or any possessory rights of Lawrence V. Otway, a/k/a

Lawrence Lorcan Otway, a/k/a Lorcan Otway, Eugenie Otway a/k/a Eugenie Gilmore-Otway,

a/k/a Eugenie Gilmore, and their affiliates and/or family members including, but not limited to, Theatre 80 LLC, Scheib's Place, Inc. d/b/a William Barnacle Tavern and Exhibition of the American Gangster, Inc.; (ii) scheduling a virtual public auction sale of the Debtor's real property and improvements located at 78-80 St. Marks Place, New York, New York 10003 for May 9, 2023 at 11:00 a.m. (Eastern) ("Sale"); (iii) approving the proposed Terms and Conditions of Sale to govern the Sale; (iv) approving the form and manner of notice of the Sale; (v) scheduling a hearing to confirm the results of the Sale; and (vi) waiving the 14-day stay period;

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be conducted by Zoom for Government® using the instructions on the Court's website, which can be found at: **https://www.nysb.uscourts.gov/zoom-video-hearing-guide**. If you wish to appear in the Hearing, you must register your appearance utilizing the Electronic Appearance portal located on the Court's website, which can be found at: **https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl**.[1] **Appearances must be entered no later than 4 p.m. one business day prior to the Hearing.**

**PLEASE TAKE FURTHER NOTICE** that objections to the Sale Motion, if any, must be in writing, conform with the Bankruptcy Code and the Bankruptcy Rules, state with particularity the grounds therefor, and be filed with the Court no later than **5:00 p.m. on March 22, 2023** ("Objection Deadline") as follows: (i) through the Court's CM/ECF system, which may be accessed through the internet at the Court's website at **www.nysb.uscourts.gov** and in portable document format (PDF) using Adobe Exchange Software for conversion; or (ii) if a party is

---

[1]     See Chief Judge Glenn's Chambers page on the Court website for information on how to make an eCourtAppearance and the link to do so: https://www.nysb.uscourts.gov/content/chief-judge-martin-glenn. There are two new tabs next to the Chamber's Rules, Calendars and Opinions tabs. The two tabs are "Zoom hearings" and "eCourtAppearances." Feel free to look at the "Zoom hearing" tab for more information about zoom. Click on the eCourtAppearances tab to make your appearance for the Hearing.

unavailable to file electronically, such party shall submit the objection in PDF format on portable

media in an envelope with the case name, case number, type and title of document, document

number to which the objection refers and the file name on the outside of the envelope to the United

States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New

York 10004. Two (2) hard copies of any filed objections should be simultaneously sent to the

Honorable Martin Glenn, Chief United States Bankruptcy Judge, at the United States Bankruptcy

Court for the Southern District of New York, One Bowling Green, New York, New York 10004-

1408.

Dated: February 24, 2023
      Wantagh, New York                  **LaMONICA HERBST & MANISCALCO, LLP**
                                       *Counsel to Marianne T. O'Toole, Esq., solely in her*
                                       *capacity as Chapter 7 Trustee of the estate of 78-80*
                                     *St. Marks Place, LLC*

            By:     *s/ Holly R. Holecek*
                     Holly R. Holecek, Esq.
                     A Partner of the Firm
                     3305 Jerusalem Avenue, Suite 201
                     Wantagh, New York 11793
                     Telephone: (516) 826-6500

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Marianne T. O'Toole, Esq., as Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                             Chapter 7

78-80 ST. MARKS PLACE, LLC,                        Case No.: 21-12139 (MG)

          Debtor.
-------------------------------------------------------------x

**TRUSTEE'S MOTION FOR: (I) AN ORDER: (A) AUTHORIZING THE SALE OF THE DEBTOR'S PROPERTY FREE AND CLEAR OF ANY ALLEGED LEASES AND/OR ANY POSSESSORY RIGHTS OF LAWRENCE V. OTWAY, A/K/A LAWRENCE LORCAN OTWAY, A/K/A LORCAN OTWAY, EUGENIE OTWAY A/K/A EUGENIE GILMORE-OTWAY, A/K/A EUGENIE GILMORE, AND THEIR AFFILIATES AND/OR FAMILY MEMBERS; (B) SCHEDULING A PUBLIC AUCTION SALE OF THE DEBTOR'S REAL PROPERTY; (C) APPROVING TERMS AND CONDITIONS OF SALE TO GOVERN THE PUBLIC AUCTION SALE OF THE DEBTOR'S REAL PROPERTY; (D) APPROVING THE FORM AND MANNER OF NOTICE OF THE PUBLIC AUCTION SALE OF THE DEBTOR'S REAL PROPERTY; (E) SCHEDULING A HEARING TO CONFIRM THE RESULTS OF THE PUBLIC AUCTION SALE; AND (F) WAIVING THE 14-DAY STAY PERIOD; AND (II) AN ORDER: (A) APPROVING THE SALE OF THE DEBTOR'S REAL PROPERTY; AND (B) GRANTING RELATED RELIEF**

TO THE HONORABLE MARTIN GLENN,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

      Marianne T. O'Toole, Esq., solely in her capacity as the Chapter 7 Trustee ("Trustee") of

the estate of 78-80 St. Marks Place, LLC ("Debtor"), by her undersigned counsel, submits this

motion ("Motion") seeking entry of: (I) an Order, substantially in the form annexed hereto as

Exhibit A ("Authorization Order"): (a) authorizing the sale of the Debtor's real property and

improvements located at 78-80 St. Marks Place, New York, New York 10003 ("Property") free

and clear of any alleged leases and/or any possessory rights of Lawrence V. Otway, a/k/a Lawrence

Lorcan Otway, a/k/a Lorcan Otway ("Lorcan Otway"), Eugenie Otway a/k/a Eugenie Gilmore-Otway, a/k/a Eugenie Gilmore ("Eugenie Otway"), and their affiliates and/or family members including, but not limited to, Theatre 80 LLC ("Theatre 80"), Scheib's Place, Inc. d/b/a William Barnacle Tavern ("Tavern") and Exhibition of the American Gangster, Inc. ("Museum"); (b) scheduling a virtual public auction sale of the Debtor's real property for May 9, 2023 at 11:00 a.m. ("Sale"); (c) approving the proposed Terms and Conditions of Sale, in the form annexed as Exhibit B, to govern the Sale; (d) approving the form and manner of notice of the Sale, substantially in the form annexed as Exhibit C; (e) scheduling a hearing to confirm the results of the Sale; and (f) waiving the 14-day stay period; and (II) an Order, in a form to be submitted following the Sale ("Approval Order"): (a) approving the sale of the Property; and (b) granting such other, further and different relief as this Court deems just and proper, and respectfully represents as follows:

## PRELIMINARY STATEMENT

The Debtor owns the real property and improvements located at 78-80 St. Marks Place, New York, New York 10003 ("Property"). The Property is the Debtor's single-most valuable asset. By Order dated October 3, 2022, the Court approved the Trustee's employment of Maltz Auctions, Inc. d/b/a Maltz Auctions ("Maltz") as real estate broker to market and sell the Property, see ECF No. 89, and Maltz has been marketing the Property for sale and soliciting offers for several months.

By Order dated January 26, 2023, the Court approved a stipulation ("Lender Stipulation") between the Trustee and secured creditor St. Mark's Mixed Use LLC ("Lender") providing for, inter alia, an agreement concerning the Trustee's sale of the Property, the allowance and treatment of the Lender's claim, and the preservation of the Property pending its sale. See ECF No. 120. By Amended Order dated February 2, 2023, the Court authorized and approved the Trustee's employment of Maltz and Cushman and Wakefield as co-real estate brokers to the Trustee

(together, "Brokers"). See ECF No. 122-1. The Brokers continue to market the Property and solicit offers.

Pursuant to a Memorandum Opinion and Order dated February 6, 2023 ("Memorandum Opinion and Order"), the Court, inter alia, granted the Trustee's motion for summary judgment against Lorcan Otway, Eugenie Otway, Theatre 80, the Tavern and the Museum on the First Claim for Relief in the Complaint dated September 30, 2022 seeking turnover of possession of the Property to the Trustee. See Adv. Pro. No. 22-01152-mg, ECF No. 29. On February 16, 2023, the Court entered a corresponding Judgment requiring, inter alia, turnover of possession and keys to the Property to the Trustee by Lorcan Otway, Eugenie Otway, Theatre 80, the Tavern and the Museum by no later than 12:00 p.m. on April 5, 2023. See id. at ECF No. 29.

By this Motion, and in accordance with the Lender Stipulation, the Memorandum Opinion and Order and the Judgment, the Trustee seeks authority to sell the Property free and clear of any alleged leases and/or any possessory rights of Lorcan Otway, Eugenie Otway, and their affiliates and/or family members including, but not limited to, Theatre 80, the Tavern and the Museum, and to schedule the sale for May 9, 2023. The Trustee also seeks approval of the Terms and Conditions of Sale, approval of the form and manner of notice of the Sale, and to schedule a hearing to confirm the results of the Sale to the successful bidder. The proposed May 9, 2023 Sale date will provide appropriate time for the Brokers to advertise the Sale, which will be conducted virtually with registration and deposits to be tendered to the Trustee by May 8, 2023. The proposed Terms and Conditions of Sale provide, inter alia, that the Property will be sold free and clear of any and all monetary interests of whatever kind or nature including, but not limited to, liens, claims, encumbrances, judgments and/or mortgages, and are consistent with the Lender Stipulation. The proposed Sale will ensure that the value of the Property is maximized and that the highest or best

offer for the Property is received.

For the reasons set forth more fully below, the Trustee respectfully requests that the Court approve the relief sought herein.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought in this Motion include 11 U.S.C. §§ 105 and 363 ("Bankruptcy Code"), Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), Local Bankruptcy Rule 6004-1, and General Order M-383 adopting the Amended Guidelines for the Conduct of Asset Sales ("M-383 Order").

## BACKGROUND

### A.      The Bankruptcy Filings

4.      On December 29, 2021 ("Petition Date"), a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code was filed on the Debtor's behalf in this Court. See ECF No. 1. Lorcan Otway is the sole member of the Debtor and owns 100% of the limited liability company membership interests in the Debtor. See id.

5.      On the Petition Date, Lorcan Otway also filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court. See Case No.: 21-12140-mg, ECF No. 1.[2]

### B.      The Property, Loan, and Pre-Petition Forbearance Agreements

6.      As of the Petition Date, the Debtor was the fee owner of the Property, which consists of a mixed-use property with residential and commercial units. See ECF No. 1 at Schedule

---

[2]      As of the date of this Motion, Lorcan Otway's personal Chapter 11 case is pending.

A/B. The Debtor itself does not operate any business other than the ownership and maintenance of the Property. See id. The Property is encumbered by a first lien held by the Lender. See id. at Schedule D.

7.      The Lender is the assignee of a loan made by 80 St. Marks Place Funding LLC to the Debtor on or about November 12, 2019 in the principal amount of $6,100,000 ("Loan"). The Loan is secured by: (a) a mortgage encumbering the Property; and (b) an assignment of leases and rents. The Loan matured on December 1, 2020.

8.      Prior to the Petition Date, the Debtor, Lorcan Otway, Eugenie Otway, Theatre 80, the Tavern, the Museum and the Lender executed a Forbearance Agreement dated as of January 14, 2021 ("Forbearance Agreement") pursuant to which the Lender agreed to extend certain obligations under the Loan to afford the Debtor time to refinance the Loan. See ECF No. 2 at ¶¶28, 29; see also ECF No. 26-1 (copy of Forbearance Agreement). Additionally, the Debtor, Lorcan Otway, Eugenie Otway, the Tavern, the Museum and Theatre 80 agreed, among other things, that the Loan matured on its terms on December 1, 2020, that interest began to accrue at the default rate (24% per annum) as of December 2, 2020, and that the Lender was owed $6,245,653.65 as of December 31, 2020, plus legal fees and protective advances from and after December 18, 2020. See id. Under the Forbearance Agreement, if the Debtor failed to repay in less than four months, the Debtor was required to list the Property for sale at $11,000,000 with the price decreasing each month through July 15, 2021, to a final listing price of $8,500,000. See id. If the Property was not sold by August 15, 2021, the Forbearance Agreement provided that the Lender would have the right to foreclose without opposition. See id.

9.      The Property was not sold in accordance with the Forbearance Agreement and, prior to the Petition Date, the Lender issued a Notice of Disposition of Collateral providing for a

public auction on November 18, 2021. See ECF No. 2 at ¶31. Prior to the scheduled public auction, the Debtor, among others, commenced an action in the Supreme Court of the State of New York, New York County, under Index No. 656446/2021, seeking to enjoin the auction sale ("State Court Action"). See ECF No. 2 at ¶32. The State Court Action was voluntarily dismissed prior to the Petition Date upon entry of a So-Ordered Stipulation and Dismissal of Action ("Consent Order") pursuant to which the Lender again agreed to forbear exercising remedies through December 30, 2021. See id.; see also ECF No. 26-2 (copy of Consent Order). The Consent Order also provided that the Debtor and Lender agreed that as of November 30, 2021, the amount due and owing to the Lender was $7,980,855.65, plus additional legal fees and protective advances from and after November 21, 2021. See id.

10.     The Debtor failed to refinance the Property in accordance with the Consent Order and instead commenced this bankruptcy case.

**C.     The Lender's Claim and Debtor's Objection**

11.     On March 29, 2022, the Lender filed a proof of claim in the Debtor's case as a secured claim in the amount of $8,326,870.38 as of the Petition Date, plus default rate interest (at 24%), attorneys' fees and expenses and protective advances, and other amounts owed as set forth therein, all of which continue to accrue, which proof of claim was assigned claim number 4 on the claims register maintained by the Court ("Claim 4").

12.     By objection dated April 11, 2022, the Debtor objected to Lender's Claim 4. See ECF No. 39 ("Debtor Claim Objection"). The Lender responded to the Debtor Claim Objection. See ECF Nos. 53, 54. The Debtor replied. See ECF No. 57. The hearing on the Debtor Claim Objection was scheduled for May 17, 2022.

**D.     The Trustee Appointments**

13.     By motion dated April 4, 2022, the Lender sought entry of an Order converting the Debtor's case to one under Chapter 7 of the Bankruptcy Code or, alternatively, appointing a Chapter 11 Trustee pursuant to sections 1104(a)(1) and 1104(a)(2) of the Bankruptcy Code. See ECF No. 36 ("Lender's Motion"). The Debtor opposed the Lender's Motion. See ECF No. 45. On April 27, 2022, the Court held a hearing on the Lender's Motion. See ECF No. 56.

14.     By Order dated May 17, 2022, the Court directed the appointment of a Chapter 11 Trustee for the Debtor. See ECF No. 58. The Court, inter alia, found cause to convert the Debtor's case pursuant to sections 1112(b)(4)(A) and 1112(b)(4)(I) of the Bankruptcy Code. See id.

15.     By Order dated May 24, 2022, the Court approved the appointment of Marianne T. O'Toole, Esq. as Chapter 11 Trustee for the Debtor ("Chapter 11 Trustee"). See ECF No. 61.

16.     The Debtor's estate had insufficient funds to pay post-petition real estate taxes of $75,797.36, which were due July 1, 2022 (and, prior to the Chapter 11 Trustee's appointment, the Debtor failed to pay post-petition real estate taxes of $70,167.26, which were due on January 1, 2022). See ECF No. 64 at p. 8, ¶15. Further, the Debtor's estate had insufficient funds to pay for ongoing operational needs, including insurance, utilities, maintenance and/or any emergencies that may arise. See id. Accordingly, by motion dated June 17, 2022, the Chapter 11 Trustee sought entry of an Order converting the Debtor's Chapter 11 case to Chapter 7. See ECF No. 64 ("Motion to Convert"). The hearing on the Motion to Convert was noticed for July 21, 2022. See id. On July 18, 2022, a limited objection to the Motion to Convert was filed on the Debtor's behalf. See ECF No. 69.

17.     On July 21, 2022, the Court held a hearing on the Motion to Convert. By Order dated July 25, 2022 ("Conversion Order"), the Court converted the Debtor's case to a case under Chapter 7 of the Bankruptcy Code. See ECF No. 71.

7

18.    Marianne T. O'Toole, Esq. was appointed as Chapter 7 Trustee of the Debtor's estate. <u>See</u> ECF No. 72. By operation of law, Marianne T. O'Toole, Esq. became the permanent Chapter 7 Trustee of the Debtor's estate.

**E.    The Lender Stipulation**

19.    By Order dated January 26, 2023, the Court approved the Lender Stipulation, which provides for, <u>inter alia</u>, the Trustee's sale of the Property, the allowance and treatment of the Lender's claim, and the preservation of the Property pending a closing on its sale. <u>See</u> ECF No. 120.

20.    In accordance with the Lender Stipulation, the Trustee sought entry of an amended Order approving the employment of the Brokers as co-real estate brokers to the Trustee. <u>See</u> ECF No. 104. On February 2, 2023, the Court entered the amended Order authorizing and approving the Trustee's employment of the Brokers. <u>See</u> ECF No. 122-1.

21.    The agreement embodied in the Lender Stipulation is subject to the occurrence of the "Free and Clear Condition", <u>i.e.</u>: (a) Court approval of a motion to approve the sale of the Property free and clear of any alleged lease and/or possessory rights of Lorcan Otway, Eugenie Otway, and their affiliates and/or family members on or before March 31, 2023; and (b) delivery of the Property to the successful purchaser free and clear of: (i) any such alleged leases and/or possessory rights of Lorcan Otway, Eugenie Otway, and their affiliates and/or family members including, but not limited to, Theatre 80, the Tavern and the Museum; and (ii) Lorcan Otway, Eugenie Otway, and their affiliates and/or family members including, but not limited to, Theatre 80, the Tavern and the Museum. <u>See</u> ECF No. 120-1 at 27, ¶18.

**F.    The Adversary Proceeding**

22.    By Memorandum Opinion and Order dated September 30, 2022, the Court, <u>inter</u>

8

alia, granted the Trustee relief from the automatic stay in the Lorcan Otway Chapter 11 case. See Case No.: 21-12140-mg, ECF No. 39.

23.     On September 30, 2022, the Trustee commenced an adversary proceeding ("Adversary Proceeding") against Lorcan Otway, Eugenie Otway, the Tavern, the Museum and Theatre 80 by filing a complaint. See Adv. Pro. 22-01152-mg[3], ECF No. 1.

24.     On October 28, 2022, issue was joined in the Adversary Proceeding. See generally Adv. Pro. ECF Nos. 10, 11.

25.     Pursuant to a Case Management and Scheduling Order dated November 15, 2022, the defendants were permitted to file an amended answer in the Adversary Proceeding on or before 5:00 p.m. on November 16. 2022. See Adv. Pro. ECF No. 15.

26.     On November 16, 2022, defendants filed an Amended Answer and Counterclaims in the Adversary Proceeding. See Adv. Pro. ECF No. 16.

27.     By motion dated December 7, 2022, the Trustee sought entry of an Order dismissing the counterclaims asserted in the Adversary Proceeding. See Adv. Pro. ECF No. 17 ("Motion to Dismiss"). The defendants opposed the Motion to Dismiss. See ECF Nos. 111, 112. The Trustee replied to the opposition. See Adv. Pro. ECF No. 25.

28.     By motion dated December 13, 2022, the Trustee sought summary judgment with respect to the First Claim for Relief in the Complaint. See Adv. Pro. ECF No. 19 ("Summary Judgment Motion"). The defendants opposed the Summary Judgment Motion. See ECF Nos. 106, 107. The Trustee replied to the opposition. See Adv. Pro. ECF Nos. 23, 24.

29.     A hearing on the Motion to Dismiss and Summary Judgment Motion was conducted

---

[3]     Hereafter, references to docket entries in the adversary proceeding shall be referred to as "Adv. Pro. ECF No."

on January 25, 2023. Pursuant to a Memorandum Opinion and Order dated February 6, 2023, the

Court granted the Trustee's Motion to Dismiss and Summary Judgment Motion. <u>See</u> Adv. Pro.

ECF No. 28. On February 16, 2023, the Court entered a corresponding Judgment. <u>See</u> <u>id</u>. at ECF

No. 29. The Judgment provides, <u>inter alia</u>, as follows:

>    a. defendants Lawrence V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway, Eugenie Otway a/k/a Eugenie Gilmore-Otway, a/k/a Eugenie Gilmore, Scheib's Place, Inc. d/b/a William Barnacle Tavern, Exhibition Of The American Gangster, Inc., Theatre 80, LLC (each a "<u>Defendant</u>" and collectively "<u>Defendants</u>"), and any other entities that are owned and/or controlled by Defendants Lawrence V. Otway, a/k/a Lawrence Lorcan Otway a/k/a Lorcan Otway and/or Eugenie Otway a/k/a Eugenie Gilmore-Otway, a/k/a Eugenie Gilmore who are in possession of any portion of the Debtor's real property known as and located at 78-80 St. Marks Place, New York, New York 10003 (collectively, "<u>Unnamed Defendants</u>"), shall vacate the Debtor's real property known as and located at 78-80 St. Marks Place, New York, New York 10003 ("<u>Property</u>") and turn over possession and keys to the Property to the Trustee no later than **12:00 p.m. on Wednesday, April 5, 2023**; and

>    b. if any of the Defendants or Unnamed Defendants fail to turn over possession of and deliver keys to the Property to the Trustee by 12:00 p.m. on Wednesday, April 5, 2023 in accordance with this Judgment: (i) the Trustee is authorized under the supervision of and with the assistance of the U.S. Marshals Service to immediately take all necessary steps to take possession of the Property including, but not limited to, using reasonable force to break open and enter upon said premises and to evict such Defendants and/or Unnamed Defendants without further Order of the Court; (ii) the U.S. Marshals Service is authorized and directed to immediately take all necessary steps to take possession of the Property including, but not limited to, breaking open and entering upon said premises and evicting such Defendants and/or Unnamed Defendants without further Order of the Court; (iii) anyone interfering with the execution of this Order is subject to arrest by the U.S. Marshals Service; and (iv) the Trustee is authorized to take any such actions as she deems necessary or appropriate with respect to any personal property of the Defendants and/or Unnamed Defendants remaining at the Property.

<u>See</u> <u>id</u>. at 2, ¶1.

### **RELIEF REQUESTED AND BASIS FOR RELIEF**

30.    By this Motion, the Trustee seeks entry of the Authorization Order (<u>Exhibit A</u>

hereto): (a) authorizing the sale of the Property free and clear of any alleged leases and/or any

possessory rights of Lorcan Otway, Eugenie Otway, and their affiliates and/or family members

including, but not limited to, Theatre 80, the Tavern and the Museum; (b) scheduling the Sale for May 9, 2023 at 11:00 a.m. (Eastern); (c) approving the proposed Terms and Conditions of Sale to govern the Sale of the Property (Exhibit B hereto); (d) approving the form and manner of notice of the Sale (Exhibit C hereto); (e) scheduling a hearing to confirm the results of the Sale; and (f) waiving the 14-day stay period required under Bankruptcy Rule 6004(h).

31.     The sale of the Property is appropriate and necessary. The proposed Sale will ensure that the value of the Property is maximized and that the highest or best offer for the Property is received.

**A.     The Sale Of The Property Should Be Authorized And Scheduled**

32.     The Property is the Debtor's single-largest asset in this Chapter 7 case. It is in the best interests of the Debtor's estate and all of its creditors for the Property to be sold. Consistent with the Lender Stipulation, the Memorandum Opinion and Order and the Judgment, the Trustee seeks to sell the Property free and clear of any alleged leases and/or any possessory rights of Lorcan Otway, Eugenie Otway, and their affiliates and/or family members including, but not limited to, Theatre 80, the Tavern and the Museum.

33.     Consistent with the Lender Stipulation, the Trustee proposes to conduct the Sale virtually on May 9, 2023 at 11:00 a.m. (Eastern), or such other later date and time designated by the Trustee. Only parties that have delivered the required $950,000 deposit and executed Terms and Conditions of Sale to the Trustee by 5:00 p.m. (Eastern) on May 8, 2023 and Lender will be entitled to participate in the Sale. At or prior to the Sale, the Trustee will determine the opening bid. Qualified bidders and Lender may make competing bids to purchase the Property. The Sale shall continue until there is only one offer that the Trustee determines is the highest or otherwise best offer for the Property.

11

34.     Upon entry of the Authorization Order, it is anticipated that the Brokers will engage in a marketing plan, which will include, inter alia: (a) listing the Sale on appropriate websites; (b) soliciting bidders by phone and email; (c) supervising inspections for interested parties; (d) advertising the Sale in appropriate publications; and (e) distributing electronic flyers and marketing materials.[4] The Trustee submits that the proposed May 9, 2023 sale date will provide sufficient time for the Brokers to adequately advertise the Sale to ensure that the highest or otherwise best offer for the Property is received.

35.     The Trustee submits that the proposed Sale of the Property is in the best interests of the Debtor's estate and its creditors and should be approved and scheduled.

**B.     The Terms And Conditions Of Sale Should Be Approved**

36.     The proposed Terms and Conditions of Sale for the Property (which are entirely consistent with the Terms and Conditions of Sale annexed to the Lender Stipulation) are annexed as Exhibit B. The salient provisions of the proposed Terms and Conditions of Sale are as follows:

a.      The Sale will be conducted virtually on May 9, 2023 at 11:00 a.m. (Eastern). See id. at ¶2.

b.      The Lender may credit bid for the Property at the Sale pursuant to section 363(k) of the Bankruptcy Code. The Lender: (a) shall in all events be deemed a qualified bidder at the Sale and be permitted to bid at the Sale; (b) shall not be required to pay a Qualifying Deposit (as defined in ¶7 of the Terms and Conditions of Sale) or any other Deposit (as defined in ¶11 of the Terms and Conditions of Sale) of any kind whatsoever, and (c) shall not be required to pay a Buyer's Premium (as defined in ¶10 of the Terms and Conditions of Sale). See id. at ¶6.

c.      To register for the Sale and bid on the Property, on or before 5:00 p.m. the day before the Sale each prospective bidder (other than the Lender) must deliver to the Trustee: (a) a certified or bank check payable to "Marianne T. O'Toole, Esq., as Trustee" in the amount of nine hundred and fifty thousand dollars ($950,000) ("Qualifying Deposit"), which amount shall serve as a good faith deposit against payment of the purchase price for the Property;

---

[4]     The Brokers will also continue to solicit offers for the Property, and the Trustee may seek approval of the terms of a stalking horse offer for the Property.

and (b) these Terms and Conditions of Sale, executed by such prospective bidder. The Trustee reserves the right to reject any bidder (other than the Lender) who, in the sole discretion of the Trustee, the Trustee believes is not financially capable of consummating the purchase of the Property. See id. at ¶7.

d.    At the conclusion of the Sale, the first highest bidder ("Highest Bidder") and the second highest bidder ("Second Highest Bidder") for the Property must also execute, and thereby agree to be bound by, a Memorandum of Sale. See id. at ¶8.

e.    The Highest Bidder or, as applicable, the Second Highest Bidder (other than the Lender) shall be solely responsible to pay the Trustee's retained co-brokers, Maltz Auctions, Inc. and Cushman and Wakefield, U.S. Inc., four (4%) percent of the amount bid by the Highest Bidder or, as applicable, the Second Highest Bidder at the Sale (such percentage amount being the "Buyer's Premium"). The sum of the amount bid at the Sale and the Buyer's Premium is defined herein as the "Purchase Price". See id. at ¶10.

f.    Within 48 hours after conclusion of the Sale, the Highest Bidder (other than the Lender) shall deliver to the Trustee, by certified check, bank check, or wire transfer an amount equal to 10% of the Purchase Price minus the amount of the Qualifying Deposit, as and for a good faith deposit (such amount, plus the Qualifying Deposit, hereinafter "Deposit"). See id. at ¶11.

g.    The Highest Bidder (other than the Lender) must pay the balance of the Purchase Price to the Trustee, by wire transfer at the closing of title to the Property ("Closing"). See id. at ¶12.

h.    The Highest Bidder must close title to the Property on or before **5:00 p.m. on June 12, 2023** ("Closing Date"), **TIME BEING OF THE ESSENCE as to the Highest Bidder**, although such date may be extended solely by the Trustee. The Closing shall take place on or before the Closing Date at the offices of the attorneys for the Trustee, LaMonica Herbst & Maniscalco LLP, 3305 Jerusalem Avenue, Wantagh, New York 11793 or by mail, as elected by the Trustee. See id. at ¶13.

i.    Real estate taxes, water and sewer charges will be apportioned as of 12:00 a.m. on the Closing Date. There will be no other apportionments pertaining to the Property. See id. at ¶14.

j.    The Highest Bidder shall pay, on the Closing Date, any and all city, county, state or other transfer taxes incurred by or in connection with the transfer of the Property. See id. at ¶15.

k.    The Property is being sold:

(a)    "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS,**" without any representations, covenants, guarantees or warranties of any kind or nature whatsoever;

(b)    free and clear of any and all monetary interests of whatever kind or nature including, but not limited to, liens, claims, encumbrances, judgments and/or mortgages (collectively, "Interests"), with such Interests, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the entry of the Order for Relief against the Debtor; provided however if the Highest Bidder or, as applicable, the Second Highest Bidder and the Lender each agree in writing, each in their sole and absolute discretion, that the Property shall be sold subject to the Mortgage of the Lender, the agreement that the Property is sold subject to Mortgage shall be conclusively evidenced if the Lender, in its sole and absolute discretion, executes and delivers an assignment of the Mortgage to Highest Bidder (or a designee of the Highest Bidder) or, as applicable, the Second Highest Bidder (or a designee of the Second Highest Bidder) as assignee. For avoidance of doubt, notwithstanding this paragraph 19(b), the Highest Bidder or, as applicable, the Second Highest Bidder must pay the entire Purchase Price (less the Deposit paid) to the Trustee at the Closing;

(c)    free and clear of the occupancies of Lawrence V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway, Eugenie Otway a/k/a Eugenie Gilmore-Otway, a/k/a Eugenie Gilmore, Scheib's Place, Inc. d/b/a William Barnacle Tavern, Exhibition Of The American Gangster, Inc., and/or Theatre 80, LLC; and

(d)    subject to, among other things:

(i) any other occupancies;

(ii) any state of facts that an accurate survey may show;

(iii) any state of facts a physical inspection may show;

(iv) any covenants, restrictions and easements of record;

(v) any building or zoning ordinances or other applicable municipal regulations and violations thereof;

(vi) environmental conditions; and

14

(vii) any and all non-monetary violations existing on the Property as of the Closing Date.

See id. at ¶19.

37.     The proposed Terms and Conditions of Sale also require bidders to disclose any connections to the Debtor, Lorcan Otway, the Trustee and/or the Trustee's professionals. See Exhibit B at ¶31.

38.     The Trustee submits in her reasonable business judgment that the proposed Terms and Conditions of Sale are designed to ensure that the Debtor's estate receives the maximum benefit from the sale of the Property on a reasonable timetable given the circumstances of this case and therefore warrant Court approval.

### C.     The Notice Of Sale Should Be Approved

39.     Pursuant to Bankruptcy Rules 2002(c) and 6004(a), the Trustee is required to give twenty-one (21) days' notice of any proposed sale of property not in the ordinary course of business to the Debtor and all creditors. See FED. R. BANKR. P. 2002(c) and 6004(a). Bankruptcy Rule 2002(c) provides that such notice must include the time and place of any auction, a sale hearing, and the time fixed for objections to the sale. See FED. R. BANKR. P. 2002(c).

40.     Here, the Notice of Sale annexed as Exhibit C will be served in accordance with Bankruptcy Rule 2002(c) at least twenty-one (21) days prior to the Sale. As reflected in the Notice of Sale, it includes: (a) the date, time and location of the Sale; (b) the Terms and Conditions of the Sale; and (c) a reasonably specific description of the Property.

41.     The Trustee submits that the Notice of Sale as proposed complies with Bankruptcy Rule 2002 and the M-383 Order, and constitutes good and adequate notice of the Sale. Therefore, the Trustee respectfully requests that the Court approve the proposed Notice of Sale.

### D.    The Sale Approval Hearing Should Be Scheduled

42.    The Trustee proposes that, following the Sale, an affirmation to confirm the results of the sale will be submitted to the Court along with the proposed Approval Order authorizing and approving, inter alia, the Trustee's sale of the Property to the successful bidder from the Sale. Subject to Court availability, the Trustee proposes that the hearing be conducted on May 10, 2023 or May 12, 2023 ("Sale Approval Hearing").

### E.    The 14-Day Stay Period Should Be Waived

43.    Pursuant to Bankruptcy Rule 6004(h), all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order, unless otherwise ordered by the Court. FED. R. BANKR. P. 6004(h). The stay period is intended to provide sufficient time for an objecting party to appeal before the order is implemented. See Advisory Committee Notes to FED. R. BANKR. P. 6004(h).

44.    Although little guidance is provided by either Bankruptcy Rule 6004(h) or the Advisory Committee Notes as to when a court should "order otherwise", it has been suggested that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." See 10 COLLIER ON BANKRUPTCY § 6004.09 (Lawrence P. King, et al. eds, 15th ed. rev. rel. 2003). If an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay pending such appeal. Id.

45.    Here, the Trustee respectfully requests that the Court waive the 14-day stay period required under Bankruptcy Rule 6004(h). This relief is both necessary and appropriate under the circumstances of this case. Indeed, in the event the Motion is approved, the Trustee intends to commence advertising the Sale.

16

## II.     **The Approval Order Should Be Entered**

46.     By this Motion, the Trustee also seeks entry of the Approval Order following the Sale Approval Hearing. As set forth above, the Trustee intends to submit an affirmation confirming the results of the Sale and the proposed Approval Order prior to the Sale Approval Hearing.

### A.     **The Sale Of The Property Represents A Reasonable Exercise Of The Trustee's Business Judgment And Should Be Approved**

47.     Pursuant to section 704(a) of the Bankruptcy Code, Chapter 7 trustees are required to "reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704(a)(1). Under Bankruptcy Rule 6004(f)(1), a trustee is permitted to sell property of the estate pursuant to section 363(b) of the Bankruptcy Code by private sale or public auction. FED. R. BANKR. P. 6004(f)(1). Section 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004 govern the sale of assets outside of the ordinary course of a debtor's business. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

48.     The M-383 Order supplements the requirements of section 363 of the Bankruptcy Code and provides, in pertinent part, that:

> When an auction is contemplated, the [Trustee] should file a single motion seeking the entry of two orders to be considered at two separate hearings. The first order . . . will approve procedures for the sale process, including any protections for an initial bidder, or stalking horse buyer, and the second order . . . will approve the sale to the successful bidder at the auction.

See M-383 Order at 2.

49.     The Trustee is statutorily charged with liquidating property of the Debtor's estate as expeditiously as is compatible with the best interests of the estate. See 11 U.S.C. § 704(a)(1). Here, the Trustee used her sound business judgment to determine that selling the Property outside

the ordinary course of business and pursuant to the Lender Stipulation is justified, necessary and appropriate. Given that the Debtor is in Chapter 7 and the Property is not necessary for any reorganization, the prudent course is to proceed with its sale. Indeed, compelling justifications exist to authorize the Sale as set forth herein.

50.    Based upon the foregoing, the Trustee submits that the proposed sale of the Property represents a reasonable exercise of the Trustee's business judgment and should be approved.

**B.    The Property Should Be Sold Free And Clear Of Any And All Monetary Interests Pursuant To Section 363(f) Of The Bankruptcy Code**

51.    The Trustee proposes that the Property be sold free and clear of any and all monetary interests of whatever kind or nature including, but not limited to, liens, claims, encumbrances, judgments and/or mortgages (collectively, "Interests"), with such Interests, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the commencement of the Debtor's bankruptcy case.

52.    Section 363 of the Bankruptcy Code permits a trustee to sell property free and clear of any interest in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the aggregate value of all liens on such property; (d) the interest is in bona fide dispute; or (e) the entity with an interest in the asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the property. See 11 U.S.C. § 363(f).

53.    Several courts have held that notwithstanding the use of the term "interest" in the statutory language of section 363(f), such section grants bankruptcy courts the power to convey assets free and clear of claims. See, e.g., In re Trans World Airlines., Inc., 322 F.3d 283, 290 (3d Cir. 2003); In re Medical Software Solutions, 286 B.R. 431, 446 (Bankr. D. Utah 2002); In re

TWA, No. 01-0056 (PJW), 2001 Bankr. LEXIS 723 at *13-14 (Bankr. D. Del. Mar. 27, 2001) ("Authorizing the sale [of debtor's assets] free and clear of . . . successor liability claims achieves the purpose of section 363 [of the Bankruptcy Code] intended by Congress."). Section 105(a) of the Bankruptcy Code provides additional support for court's authority to convey assets free and clear of claims. See In re White Motor Credit Corp., 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) (stating that the absence of specific authority to sell assets free and clear of claims poses no impediment to such sale, as such authority is implicit in the court's equitable powers when necessary to carry out the provisions of Title 11); see also Equity Broad. Corp. v. Shubert (In re Winstar Commc'ns, Inc.), 284 B.R. 40, 48 (Bankr. D. Del. 2002) (approving a sale order transferring the debtor's securities free and clear of all encumbrances pursuant to sections 105(a) and 363(f) of the Bankruptcy Code).

54.    Here, Lender has already consented to the sale of the Property and agreed to a carve-out for the benefit of the Debtor's estate. See ECF No. 120. Furthermore, all known holders of Interests in the Property will be provided notice of the proposed Sale. Thus, all known holders of Interests in the Property will have an opportunity to oppose the proposed sale of the Property pursuant to section 363(f) of the Bankruptcy Code and to be heard at the hearing.

55.    Based on the foregoing, the requirements of section 363(f) of the Bankruptcy Code are satisfied, and the Property may be sold free and clear of any and all Interests.

### C.    The Successful Bidder Should Be Afforded Protection Under Section 363(m) Of The Bankruptcy Code

56.    Section 363(m) of the Bankruptcy Code affords protection to a good faith purchaser in any interest in property purchased from an estate, whether the sale conducted is later reversed or modified on appeal. Specifically, section 363(m) provides as follows:

The reversal or modification on appeal of an authorization under subsection (b) or

> (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m); see also Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

57. The United States Court of Appeals for Second Circuit has held that a party would have to show fraud or collusion between a buyer and the debtor-in-possession or trustee in order to demonstrate a lack of good faith. See Kabro Assocs., L.L.C. v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 276 (2d Cir. 1997) (citations omitted) ("[t]ypically the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the Trustee, or an attempt to take grossly unfair advantage of other bidders."); see also In re Bakalis, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

58. Here, the Trustee intends to conduct the Sale of the Property. The Trustee anticipates that, following the Sale, she will seek to confirm the sale to the highest or best bidder. The Trustee anticipates that such bidder for the Property will be acting in good faith since the Sale will be conducted at arm's-length with an opportunity for competitive bidding.

59. Accordingly, it is anticipated that the Approval Order will afford the successful bidder at the Sale (including Lender) the protections available under section 363(m) of the Bankruptcy Code.

60.    Pursuant to the M-383 Order, the Trustee is required to highlight any "extraordinary provisions" in a separate section of a motion seeking to sell estate assets. The Trustee submits that there are no "extraordinary provisions" with respect to the proposed Sale that have not otherwise been highlighted herein.

### NOTICE AND NO PRIOR REQUEST

61.    Notice of this Motion shall be provided in accordance with Bankruptcy Rule 2002(a)(2).

62.    No previous request for the relief sought herein has been made by the Trustee to this or any other Court.

**WHEREFORE** the Trustee respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: February 24, 2023
      Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Marianne T. O'Toole, Esq., solely in her capacity as Chapter 7 Trustee of the estate of 78-80 St. Marks Place, LLC*

By:    *s/ Holly R. Holecek*
      Holly R. Holecek, Esq.
      A Partner of the Firm
      3305 Jerusalem Avenue, Suite 201
      Wantagh, New York 11793
      Telephone: (516) 826-6500