UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                          Chapter 7

78-80 ST. MARKS PLACE, LLC,                     Case No.: 21-12139 (MG)

        Debtor.

------------------------------------------------------------x

### ORDER CONFIRMING SALE OF THE DEBTOR'S REAL PROPERTY AND IMPROVEMENTS LOCATED AT 78-80 ST. MARKS PLACE, NEW YORK, NEW YORK 10003 AND GRANTING RELATED RELIEF

Upon the Order dated March 29, 2023 ("Sale Procedures Order") [ECF No. 125] that, inter alia, authorized Marianne T. O'Toole, solely in her capacity as the Chapter 7 Trustee ("Trustee") of the estate of 78-80 St. Marks Place, LLC ("Debtor"), to conduct a public auction sale of the Debtor's real property and improvements located at 78-80 St. Marks Place, New York, New York 10003 ("Property"); and upon the Notice To Creditors And Other Parties In Interest Of Trustee's Intended Sale [ECF No. 126] and the related Affidavit of Service [ECF No. 127]; and upon the virtual public auction sale of the Property conducted on May 9, 2023 ("Sale"); and upon the Order dated May 11, 2023 [ECF No 137] Approving the Stalking Horse Terms and Conditions of Sale and Granting Related Relief; and upon that portion of the Trustee's motion ("Sale Motion") [ECF No. 123][1] seeking entry of an Order: (i) approving the sale of the Property; and (ii) granting such other, further and different relief as the Court deems just and proper; and upon the affidavit of Richard B. Maltz ("Maltz Affidavit") [ECF No. 135], Chief Executive Officer of Maltz Auctions. Inc. d/b/a Maltz Auctions ("Maltz Auctions"), in support of the entry of an Order confirming the results of the Sale of the Property; and upon the affidavit of Ian M. Brooks ("Brooks Affidavit") [ECF No. 136], a Director at Cushman &

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meanings ascribed to them in the Sale Motion.

Wakefield ("CWK"), in support of the entry of an Order confirming the results of the Sale of the Property; and a hearing having been conducted on May 10, 2023 ("Hearing"); and upon the record of the Hearing, which is incorporated by reference herein; and no additional notice or hearing being required, **THE COURT FINDS AND DETERMINES THAT**:[2]

A.      Proper, timely, adequate and sufficient notice of the Sale of the Property was provided in accordance with sections 102 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 6004, and the Sale Procedures Order.

B.      Creditors, parties-in-interest and other entities were afforded a reasonable opportunity to bid on the Property.

C.      The marketing process implemented by the Trustee through Maltz Auctions and CWK, as set forth in the Maltz Affidavit, the Brooks Affidavit and at the Hearing, was fair, proper, complete and reasonably calculated to maximize the value of, and bids for, the Property.

D.      At the Sale, 78SMP10003 LLC made the highest and best bid for the Property in the amount of $8,700,000.

E.      The offer from 78SMP10003 LLC to purchase the Property pursuant to the Memorandum of Sale-Highest Bidder and the Stalking Horse Terms and Conditions of Sale, copies of which are collectively annexed hereto as **Exhibit A**, is the highest and best offer received after marketing and a fair and open sale process.

F.      The sale of the Property to 78SMP10003 LLC is an arm's-length transaction entered into by the Trustee and 78SMP10003 LLC without collusion, in good faith and from arm's-length bargaining positions.

---

[2]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, when appropriate. See FED. R. BANKR. P. 7052.

G.      78SMP10003 LLC is not an "insider," as that term is defined in section 101(31) of the Bankruptcy Code, of the Debtor or the Trustee.

H.      78SMP10003 LLC has not acted in a collusive manner with any person and the bid from 78SMP10003 LLC was not controlled by any agreement among bidders.

I.      In the absence of a stay pending appeal prior to the closing, 78SMP10003 LLC will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing on the sale of the Property after the entry of this Order.

J.      78SMP10003 LLC is a good faith purchaser of the Property within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to all of the protections afforded thereby.

K.      At the Sale, Mark O'Brien made the second highest and best bid for the Property in the amount of $8,600,000.

L.      The offer from Mark O'Brien (or a wholly-owned limited liability company to be formed by him) to purchase the Property pursuant to the Memorandum of Sale-Second Highest Bidder and the Terms and Conditions of Sale,  copies of which are collectively annexed hereto as **Exhibit B**, is the second highest and best offer received after marketing and a fair and open sale process.

M.      A sale of the Property to Mark O'Brien (or a wholly-owned limited liability company to be formed by him) would be an arm's-length transaction entered into by the Trustee and Mark O'Brien without collusion, in good faith and from arm's-length bargaining positions.

N.      Mark O'Brien is not an "insider," as that term is defined in section 101(31) of the Bankruptcy Code, of the Debtor or the Trustee.

O.      Mark O'Brien has not acted in a collusive manner with any person and the bid from Mark O'Brien was not controlled by any agreement among bidders.

P.      In the absence of a stay pending appeal prior to the closing, Mark O'Brien (or a wholly-owned limited liability company to be formed by him) will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing on the sale of the Property as the second highest bidder after the entry of this Order.

Q.      Mark O'Brien (or a wholly-owned limited liability company to be formed by him) would be a good faith purchaser of the Property within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to all of the protections afforded thereby.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Pursuant to the Sale Procedures Order and sections 363(b), (f), (m) and (n) of the Bankruptcy Code, the Trustee is authorized to sell the Property to 78SMP10003 LLC pursuant to the Memorandum of Sale-Second Highest Bidder and the Stalking Terms and Conditions of Sale annexed hereto as **Exhibit A**.

2.      78SMP10003 LLC shall be solely responsible to pay the Trustee's co-brokers, Maltz Auctions and CWK the sum of $348,000 (i.e., four (4%) percent of 78SMP10003's successful bid for the Property) ("Buyer's Premium"), the sum of the amount bid at the Sale and the Buyer's Premium is defined herein as "Purchase Price". For avoidance of doubt, notwithstanding this paragraph 2, 78SMP10003 LLC must pay the entire Purchase Price (less the Deposit paid) to the Trustee at the Closing.

3.      78SMP10003 LLC must pay the balance of the Purchase Price to the Trustee, by wire transfer at the closing of title to the Property ("Closing"). 78SMP10003 must close title to the Property on or before **5:00 p.m. on June 12, 2023** ("Closing Date"), **TIME BEING OF**

**THE ESSENCE as to** 78SMP10003, although such date may be extended solely by the Trustee. The Closing shall take place on or before the Closing Date at the offices of the attorneys for the Trustee, LaMonica Herbst & Maniscalco LLP, 3305 Jerusalem Avenue, Wantagh, New York 11793 or by mail, as elected by the Trustee.

4.      Real estate taxes, water and sewer charges will be apportioned as of 12:00 a.m. on the Closing Date. There will be no other apportionments pertaining to the Property.

5.      78SMP10003 LLC shall pay, on the Closing Date, any and all city, county, state or other transfer taxes incurred by or in connection with the transfer of the Property.

6.      The Property shall be sold to 78SMP10003 LLC free and clear of any and all monetary interests of whatever kind or nature including, but not limited to, liens, claims, encumbrances, judgments and/or mortgages (collectively, "Interests"), with such Interests, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the entry of the Order for Relief against the Debtor; provided however if 78SMP10003 LLC and the Lender each agree in writing, each in their sole and absolute discretion, that the Property shall be sold subject to the Mortgage of the Lender (and the agreement that the Property is sold subject to Mortgage shall be conclusively evidenced if the Lender, in its sole and absolute discretion, executes and delivers an assignment of the Mortgage to 78SMP10003 LLC (or a designee of 78SMP10003 LLC) as assignee). For avoidance of doubt, notwithstanding this paragraph 6, 78SMP10003 LLC must pay the entire Purchase Price (less the Deposit paid) to the Trustee at the Closing.

7.      If 78SMP10003 LLC closes on the sale of Property at any time on or after the entry of this Order, the parties shall be entitled to the protection of section 363(m) of the Bankruptcy Code on appeal, provided further that the purchase of the Property by 78SMP10003

LLC constitutes a good faith purchase for fair value within the meaning of section 363(m) of the Bankruptcy Code.

8.    The sale of Property approved by this Order is not subject to avoidance under section 363(n) of the Bankruptcy Code.

9.    If 78SMP10003 LLC fails to close on the sale of the Property in accordance with this Order, the Trustee is authorized to sell the Property to Mark O'Brien (or a wholly-owned limited liability company to be formed by him), and the relief granted herein shall apply to Mark O'Brien (or a wholly-owned limited liability company to be formed by him).

10.    Each and every federal, state and local government agency or department is directed to accept, file and record any and all documents necessary and appropriate to consummate the sale of Property outlined herein, and a copy of this Order may be filed in any place where state, federal or local law permits filing or recording.

11.    The Trustee is authorized and empowered to expend such funds and execute and deliver any and all documents as are reasonably necessary to: (a) effectuate the closing of title to the Property; and (b) implement the terms of this Order.

12.    Nothing in this Order shall modify or affect: (i) the *Stipulation Pursuant To Bankruptcy Rule 9019 And Sections 105, 362, 363, 364 And 502 Of The Bankruptcy Code, (I) Settling And Allowing The Claim Of St. Mark's Mixed Use LLC; (II) Determining That St. Mark's Mixed Use LLC Has A Valid First Priority Lien On The Debtor's Property; (III) Providing For Use Of Cash Collateral; (IV) Providing For Advances To Be Made By St. Marks Mixed Use LLC; (V) Providing For A Carve-Out From The Liens Of St. Marks Mixed Use LLC In Connection With The Sale Of The Real Property Located At 78-80 St. Marks Place, New York, New York 10003; And (VI) Granting Related Relief* ("Trustee/Lender Stipulation"); (ii) the Order

6

of this Court dated January 26, 2023 approving the Trustee/Lender Stipulation [ECF No. 120]; or

(iii) the Trustee's or Lender's rights under the Trustee/Lender Stipulation.

13.     All objections to entry of this Order or to the relief provided herein and requested in the Sale Motion are hereby denied and overruled in their entirety.

14.     This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

**IT IS SO ORDERED.**

Dated:  May 11, 2023
          New York, New York

_____**/s/ Martin Glenn**_____
MARTIN GLENN
Chief United States Bankruptcy Judge

# **EXHIBIT A**

## MEMORANDUM OF SALE- HIGHEST BIDDER

The undersigned has this <u>9th</u> day of <u>May</u>_____, 2023, agreed to purchase the real property and improvements located at 78-80 St. Marks Place, New York, New York 10003 ("Property"), vested in Marianne T. O'Toole, solely in her capacity as Chapter 7 Trustee for the bankruptcy estate of 78-80 St. Marks Place, LLC, and being sold for the sum of $ <u>8,700,000</u>_____, and hereby promise and agree to comply with the terms and conditions of the sale of said Property, as set forth in the annexed Stalking Horse Terms and Conditions of Sale.

78SMP10003 LLC
_____
PRINT NAME OF PURCHASER

PRINT NAME OF PURCHASER
_____

_____
PURCHASER SIGNATURE

PURCHASER SIGNATURE
_____

Sole Member
_____
PURCHASER TITLE (if entity)

PURCHASER TITLE (if entity)
_____

78 St. Mark's Place, #3, NY, NY 10003
_____
ADDRESS

ADDRESS
_____

ori.kushnir@gmail.com
_____
E-MAIL

E-MAIL
_____

917-806-2880
_____
TELEPHONE NUMBER

TELEPHONE NUMBER
_____

_____
FAX NUMBER

FAX NUMBER
_____

## ATTORNEY INFORMATION

Name:    Howard P. Magaliff, Esq.
Address:  335 Madison Ave., 9th Floor, NY, NY 10017
E-Mail:  HMagaliff@RM3Law.com
Phone:  646-453-7851

This verifies that the highest bid in the above sale was for the sum of $ <u>8,700,000</u>_____ and received from <u>78SMP10003 LLC</u>_____ the sum of $<u>950,000</u>_____, as a non-refundable deposit for the purchase of the Property pursuant to the annexed Stalking Horse Terms and Conditions of Sale.

_____
Marianne T. O'Toole, Esq., Chapter 7 Trustee
c/o LaMonica Herbst & Maniscalco LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500 Phone
(516) 826-0222 Fax

## STALKING HORSE TERMS AND CONDITIONS OF SALE

1. These Stalking Horse Terms and Conditions of Sale are entered into in connection with the public sale ("Sale") of the real property and improvements known as and located at 78-80 St. Marks Place, New York, New York 10003 ("Property").

2. The Sale will be conducted on **May 9, 2023 at 11:00 a.m.** The Sale will be conducted virtually. Audio and video of the Sale will be available via Zoom, and online bidding will be conducted through https://remotebidding.maltzauctions.com/ or the Maltz Auctions App on mobile devices, which is available for download on the App Store and Google Play (see https://maltzauctions.com/download-app/).

3. The seller of the Property is Marianne T. O'Toole, Esq., solely in her capacity as Chapter 7 Trustee ("Trustee") of the estate of 78-80 St Marks Place, LLC ("Debtor"). The Debtor's Chapter 7 bankruptcy case is pending in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") under case no. 21-12139 (MG).

4. The Property is encumbered by first priority liens belonging to St. Mark's Mixed Use LLC ("Lender") including, without limitation, a mortgage ("Mortgage") held by the Lender. The Lender is represented by Katsky Korins LLP, 605 Third Avenue, New York, New York 10158. The Trustee and the Lender entered into a certain stipulation of settlement, which, among other things, allowed the Lender's secured claim ("Lender Stipulation").

5. The Sale is being conducted pursuant to an Order of the Bankruptcy Court dated March 29, 2023 ("Authorization Order") and sections 363 (b), (d), (f) and (m) of title 11 of the United States Code ("Bankruptcy Code"). These Stalking Horse Terms and Conditions of Sale set forth the rights solely with respect to 78SMP10003 so as to address its stalking horse bid. Nothing herein shall in anyway modify the Authorization Order or the Terms and Conditions of Sale approved by such order ("Terms of Sale"). The Sale to any person other than 78SMP10003 shall be made pursuant to such Terms of Sale.

6. In accordance with the Authorization Order and the Lender Stipulation, the Lender may credit bid for the Property at the Sale pursuant to section 363(k) of the Bankruptcy Code.

7. 78SMP10003 LLC ("78SMP10003") hereby irrevocably agrees to purchase the Property for $8,500,000, subject to (i) higher or better offers that may be tendered by any other person(s) to the Trustee at the Sale and (ii) these Stalking Horse Terms and Conditions of Sale, and Ori Kushnir and Sivan Lahat agree to withdraw with prejudice the Chapter 11 administrative proof of claim filed against the Debtor's estate ("Claim 11") and any other claims against the Debtor's estate ("Offer").

8. Subject to Bankruptcy Court approval and subject to higher or better offers for the Property that may be offered by any other person(s) to the Trustee at the Sale, the Trustee has accepted the Offer from 78SMP10003. The Trustee's obligations under these Stalking Horse Terms and Conditions of Sale are entirely subject to, and contingent upon approval by the Bankruptcy Court.

9. Simultaneous with the execution of these Stalking Horse Terms and Conditions of Sale, 78SMP10003 will deposit the sum of $950,000 ("Qualifying Deposit") with the Trustee as earnest

money by wire transfer from an account of 78SMP10003, which Qualifying Deposit will be maintained by the Trustee in a segregated account.

10.    At the Sale, the next highest bid for the Property shall be not less than $8,600,000. The Trustee will determine the highest or best bid for the Property at the Sale.

11.    At the conclusion of the Sale, if 78SMP10003 is the first highest or second highest bidder for the Property, 78SMP10003 shall execute, and thereby agree to be bound by, a Memorandum of Sale in the form annexed hereto.

12.    If 78SMP10003 is neither the first highest bidder nor the second highest bidder for the Property at the Sale, then: (a) these Stalking Horse Terms and Conditions of Sale shall be deemed null and void, with no liability accruing hereunder to either 78SMP10003 or the Trustee (except as otherwise expressly provided herein); (b) to the extent not already withdrawn, Claim 11 shall be deemed withdrawn with prejudice and Ori Kushnir and Sivan Lahat shall not file any other claims against the Debtor's estate; (c) the Qualifying Deposit will be returned to 78SMP10003 within two business days after the date that the Bankruptcy Court enters an order approving the Sale; (d) contingent upon the Trustee's closing of the sale of the Property to any person other than 78SMP10003, 78SMP10003 shall be entitled to a break-up fee in the aggregate amount of $85,000 (i.e., 1% of the Offer) ("Break-Up Fee"), which shall be paid to 78SMP10003 within fourteen days after the closing of the sale of the Property; and (e) except as otherwise expressly provided in this paragraph 12, 78SMP10003 shall have no further rights or remedies of any kind hereunder.

13.    If 78SMP10003 is the second highest bidder for the Property at the Sale, and the highest bidder actually closes on the purchase of the Property, then: (a) these Stalking Horse Terms and Conditions of Sale shall be deemed null and void, with no liability accruing hereunder to either 78SMP10003 or the Trustee (except as otherwise expressly provided herein); (b) to the extent not already withdrawn, Claim 11 shall be deemed withdrawn with prejudice and Ori Kushnir and Sivan Lahat shall not file any other claims against the Debtor's estate; (c) the Qualifying Deposit will be returned to 78SMP10003 within two business days after the date that the highest bidder actually closes on the purchase of the Property; (d) contingent upon the Trustee's closing of the sale of the Property to any person other than 78SMP10003, 78SMP10003 shall be entitled to the Break-Up Fee, which shall be paid to 78SMP10003 within fourteen days after the closing of the sale of the Property; and (e) except as otherwise provided in this paragraph 13, 78SMP10003 shall have no further rights or remedies hereunder.

14.    If 78SMP10003 is the successful bidder for the Property at the Sale, 78SMP10003 shall be solely responsible to pay the Trustee's co-brokers, Maltz Auctions, Inc. and Cushman and Wakefield, U.S. Inc., four (4%) percent of 78SMP10003's successful bid for the Property (such percentage amount being "Buyer's Premium"). The sum of the amount bid at the Sale and the Buyer's Premium is defined herein as "Purchase Price".

15.    If 78SMP10003 is the successful bidder for the Property at the Sale: (a) within 48 hours after conclusion of the Sale, 78SMP10003 shall deliver to the Trustee, by certified check, bank check, or wire transfer an amount equal to 10% of the Purchase Price minus the amount of the Qualifying Deposit, as and for a good faith deposit (such amount, plus the Qualifying Deposit, hereinafter "Deposit"); or (b) to the extent the Qualifying Deposit equals 10% or more of the

2

Purchase Price, it shall be deemed the "Deposit".

16.    78SMP10003 must pay the balance of the Purchase Price to the Trustee, by wire transfer at the closing of title to the Property ("Closing").

17.    78SMP10003 must close title to the Property on or before **5:00 p.m. on June 12, 2023** ("Closing Date"), **TIME BEING OF THE ESSENCE as to** 78SMP10003, although such date may be extended solely by the Trustee. The Closing shall take place on or before the Closing Date at the offices of the attorneys for the Trustee, LaMonica Herbst & Maniscalco LLP, 3305 Jerusalem Avenue, Wantagh, New York 11793 or by mail, as elected by the Trustee.

18.    Real estate taxes, water and sewer charges will be apportioned as of 12:00 a.m. on the Closing Date. There will be no other apportionments pertaining to the Property.

19.    78SMP10003 shall pay, on the Closing Date, any and all city, county, state or other transfer taxes incurred by or in connection with the transfer of the Property.

20.    In connection with the Closing and Closing Date, 78SMP10003 is hereby given notice that **TIME IS OF THE ESSENCE against 78SMP10003 and the failure of 78SMP10003 to close for any reason whatsoever (except as otherwise provided below), including its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Trustee retaining the Deposit and the termination of 78SMP10003's right to acquire the Property under these Stalking Horse Terms and Conditions of Sale**. The Trustee's right to retain the monies paid including, without limitation, the Deposit, is not a penalty but rather liquidated damages and it is hereby agreed and acknowledged by the parties hereto that the amount of damages sustained by the Trustee are difficult to determine and the liquidated damages set forth herein are reasonable under the circumstances. 78SMP10003 shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit 78SMP10003 to cancel or avoid its obligation under these Stalking Horse Terms and Conditions of Sale other than the Trustee's inability to deliver insurable title to the Property. Further, 78SMP10003 shall have demonstrated, to the sole satisfaction of the Trustee, evidence of its ability to conclude the transaction upon these Stalking Horse Terms and Conditions of Sale without delay. **Expenses incurred by 78SMP10003 concerning any due diligence including, but not limited to, obtaining title reports and legal fees, shall be the sole responsibility of 78SMP10003 and under no circumstances shall the Trustee, the estate or the Trustee's professionals be responsible for, or pay, such expenses.**

21.    In the event that: (a) 78SMP10003 is the second highest bidder at the Sale; and (b) the highest bidder at the Sale fails to tender the payment of the Purchase Price (as defined in the Terms of Sale) on the Closing Date (as defined in the Terms of Sale), or otherwise perform any of its obligations under the Terms of Sale, 78SMP10003 hereby agrees to purchase the Property for the amount that 78SMP10003 bids at the Sale (plus the applicable Buyer's Premium). All terms and provisions of these Stalking Horse Terms and Conditions of Sale (i.e., including, without limitation, Paragraphs 14-20 hereof) shall apply to such a sale to 78SMP10003 and any deposit given by 78SMP10003. The closing of such sale to 78SMP10003 shall be on a date not later than 45 days after notice from the Trustee's counsel to counsel for 78SMP10003 advising that the highest bidder defaulted and demanding that 78SMP10003 purchase the Property, **TIME BEING OF THE ESSENCE against 78SMP10003.** For avoidance of doubt, the Trustee shall be authorized to close

3

on the sale to 78SMP10003 without further notice. In the event that 78SMP10003 is the second highest bidder and 78SMP10003 fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Stalking Horse Terms and Conditions of Sale, the Trustee shall have all of her rights under Paragraph 20 above.

22.　　The Trustee and her professionals, including the Trustee's retained co-brokers, Maltz Auctions, Inc. and Cushman and Wakefield, U.S. Inc., have not made, and do not make, any representations or warranties of any kind, including, but not limited to, as to the physical condition, expenses, operations, leases, rents, tenancies, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property that might be pertinent to the purchase of the Property, and including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Property; (b) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (d) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (e) the current or future use of the Property; (f) the present and future condition and operating state of any and all machinery or equipment on the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property on the Property; (h) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning subdivision or non-subdivision of the Property; or (j) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property. Each bidder hereby expressly agrees and acknowledges that no such representations or warranties have been made. The Trustee and her professionals, including the Trustee's retained co-brokers, Maltz Auctions, Inc. and Cushman and Wakefield, U.S. Inc., are not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Trustee unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Trustee.

23.　　The Property is being sold:

(a)　　"AS IS" "WHERE IS", "WITH ALL FAULTS," without any representations, covenants, guarantees or warranties of any kind or nature whatsoever;

(b)　　free and clear of any and all monetary interests of whatever kind or nature including, but not limited to, liens, claims, encumbrances, judgments and/or mortgages (collectively, "Interests"), with such Interests, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the entry of the Order for Relief against the Debtor; provided

<u>however</u> if 78SMP10003 and the Lender each agree in writing, each in their sole and absolute discretion, that the Property shall be sold subject to the Mortgage of the Lender, the agreement that the Property is sold subject to Mortgage shall be conclusively evidenced if the Lender, in its sole and absolute discretion, executes and delivers an assignment of the Mortgage to 78SMP10003, as assignee. For avoidance of doubt, notwithstanding this paragraph 23(b), 78SMP10003 must pay the entire Purchase Price (less the Deposit paid) to the Trustee at the Closing;

(c)    free and clear of the occupancies of Lawrence V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway, Eugenie Otway a/k/a Eugenie Gilmore-Otway, a/k/a Eugenie Gilmore, Scheib's Place, Inc. d/b/a William Barnacle Tavern, Exhibition Of The American Gangster, Inc., and/or Theatre 80, LLC; and

(d)     subject to, among other things:

(i) any other occupancies;

(ii) any state of facts that an accurate survey may show;

(iii) any state of facts a physical inspection may show;

(iv) any covenants, restrictions and easements of record;

(v) any building or zoning ordinances or other applicable municipal regulations and violations thereof;

(vi) environmental conditions; and

(vii) any and all non-monetary violations existing on the Property as of the Closing Date.

24.    78SMP10003 acknowledges that it has had the opportunity to review the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigation of the Property in making its bids. Neither the Trustee nor any of her representatives, including the Trustee's retained co-brokers, Maltz Auctions, Inc. and Cushman and Wakefield, U.S. Inc., make any representations or warranties with respect to the permissible uses of the Property, including, but not limited to, the zoning of the Property. 78SMP10003 acknowledges that it has conducted its own due diligence in connection with the Property and is not relying on any information provided by the Trustee and her professionals.

25.    The Trustee shall convey the Property by delivery of a Trustee's Deed. The quality of title shall be that which any reputable title insurance company authorized to do business in the State of New York is willing to approve and insure. The Trustee may at her option arrange for the issuance of a title insurance policy by such a company at 78SMP10003's sole cost and expense.

26.    Any notices to the 78SMP10003 or the Trustee hereunder shall be sufficient if sent by

5

email to (a) counsel for such party; or (b) to such party, and shall be deemed given on the date sent.

27.    Signatures delivered by electronic mail or facsimile shall have the same force and effect as original signatures.

28.    Except as may be authorized by an Order of the Bankruptcy Court, neither the Trustee nor the estate are liable or responsible for the payment of fees of any broker for any bidder including, but not limited to, 78SMP10003.

29.    Nothing contained in these Stalking Horse Terms and Conditions of Sale is intended to supersede or alter any provisions of the Lender Stipulation, the Bankruptcy Code or otherwise interfere with the jurisdiction of the Bankruptcy Court. The Lender and the Trustee shall retain all of their respective rights under the Lender Stipulation. Without limiting the foregoing: (a) if the Lender (or its designee) takes title to the Property, the Lender's Mortgage on the Property shall not merge with any deed to the Property granted by the Trustee to the Lender (or its designee); and (b) following the Closing of Property sale to any person, the Lender shall have a deficiency claim under the Loan Documents (as defined in the Lender Stipulation) in the amount set forth in the Lender Stipulation. All of the terms and conditions set forth in these Stalking Horse Terms and Conditions of Sale are subject to modification as may be directed by the Trustee, after consultation with the Lender, provided that any such modification is not inconsistent with the Lender Stipulation, or by the Bankruptcy Court. The Trustee reserves the right to modify these Stalking Horse Terms and Conditions of Sale at the Sale or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Bankruptcy Court.

30.    78SMP10003 acknowledges having read these Stalking Horse Terms and Conditions of Sale and agrees to be bound by them.

31.    If the Trustee is unable to deliver title to the Property in accordance with these Stalking Horse Terms and Conditions of Sale for any reason whatsoever, her only obligation will be to refund the Deposit to 78SMP10003 and, upon such refund, 78SMP10003 shall not have any claim or recourse whatsoever against Property or the Trustee, the Debtor's estate, the Trustee's professionals, or the Lender.

32.    The Trustee reserves her right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reason whatsoever, as she deems necessary or appropriate.

33.    The Sale of the Property is subject to confirmation by the Trustee. Prior to the Closing, the Bankruptcy Court may enter an Order confirming the results of the Sale.

34.    78SMP10003 represents and warrants that it is capable of performing its obligations under these Stalking Horse Terms and Conditions of Sale and has the financial wherewithal to perform its obligations under these Stalking Horse Terms and Conditions of Sale.

35.    Neither 78SMP10003, Ori Kushnir nor Silvan Lahat shall record these Stalking Horse Terms and Conditions of Sale or file any *lis pendens* on the Property. 78SMP10003, Ori Kushnir and Silvan Lahat hereby jointly and severally: (a) indemnify the Trustee for any and all damages that may be incurred by the Trustee in the event of any breach of the immediately prior sentence; and (b) reimburse the Trustee for all of her reasonable attorneys' fees and expenses incurred as a result of

6

such breach.

36.     Except as disclosed below, 78SMP10003 represents and warrants that it has no connections to the Debtor, the Debtor's sole member (Lawrence Otway a/k/a Lorcan Otway), the Lender, the Trustee and/or the Trustee's professionals and that is has never been affiliated in any manner whatsoever, or held any interest in, the Debtor:

> Ori Kushnir, the sole member of 78SMP10003, is an occupant of the Property. Ori Kushnir and Sivan Lahat asserted a Chapter 11 administrative proof of claim against the Debtor's estate.

37.     The Bankruptcy Court shall determine any disputes concerning the Sale of the Property. 78SMP10003 consents to the jurisdiction of the Bankruptcy Court to determine such disputes.

I have read these Stalking Horse Terms and Conditions of Sale and agree to be bound by them.

Dated: May 5   , 2023

_____
**Ori Kushnir**, solely as to paragraphs 7, 12(b), 13(b), and 35

_____
**Sivan Lahat**, solely as to paragraphs 7, 12(b), 13(b) and 35

**78SMP10003 LLC**

By: _____
     Ori Kushnir, Sole Member

<u>Bidder contact information:</u>

c/o Ori Kushnir
78 St Mark's Place, #3
New York, New York 10003

<u>Attorney name and contact information (if any):</u>

Howard P. Magaliff, Esq.
R3M Law, LLP

Email: HMagaliff@R3MLaw.com
Telephone: 646-453-7851

# EXHIBIT B

## MEMORANDUM OF SALE- SECOND HIGHEST BIDDER

The undersigned has this 9th day of May 2023, agreed to purchase the real property and improvements located at 78-80 St. Marks Place, New York, New York 10003 ("Property"), vested in Marianne T. O'Toole, solely in her capacity as Chapter 7 Trustee for the bankruptcy estate of 78-80 St. Marks Place, LLC, as the Second Highest Bidder (as defined in the annexed Terms and Conditions of Sale) for the sum $8,600,000, and hereby promises and agrees to comply with the terms and conditions of the sale of said Property, as set forth in the annexed Terms and Conditions of Sale.

Mark O'Brien (or a wholly-owned
LLC to be formed by him)
PRINT NAME OF PURCHASER                    PRINT NAME OF PURCHASER

_____
PURCHASER SIGNATURE                        PURCHASER SIGNATURE

_____            _____
PURCHASER TITLE (if entity)                PURCHASER TITLE (if entity)

110 St. Marks Place, #17, NY, NY 10003     _____
ADDRESS                                    ADDRESS

mark@obteamnyc.com                         _____
E-MAIL                                     E-MAIL

917-485-4020                               _____
TELEPHONE NUMBER                           TELEPHONE NUMBER

_____            _____
FAX NUMBER                                 FAX NUMBER

### ATTORNEY INFORMATION
Name:      Andrew Luftig, Esq., Chaves Perlowitz Luftig LLP
Address:   One Liberty Plaza, 46th Floor, NY, NY 10006
E-Mail:    al@cpllawfirm.com
Phone:     212-791-5993

This verifies that the second highest bid in the above sale was for the sum of $8,600,000.

_____ Esq., As Chapter 7 Trustee
Marianne T. O'Toole, Esq., Chapter 7 Trustee
c/o LaMonica Herbst & Maniscalco LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500 Phone
(516) 826-0222 Fax

## TERMS AND CONDITIONS OF SALE

1. These Terms and Conditions of Sale are promulgated in connection with the public sale ("Sale") of the real property and improvements known as and located at 78-80 St. Marks Place, New York, New York 10003 ("Property").

2. The Sale will be conducted on **May 9, 2023 at 11:00 a.m.** The Sale will be conducted virtually. Audio and video of the Sale will be available via Zoom, and online bidding will be conducted through https://remotebidding.maltzauctions.com or the Maltz Auctions App on mobile devices, which is available for download on the App Store and Google Play (see https://maltzauctions.com/download-app ).

3. The seller of the Property is Marianne T. O'Toole, Esq., solely in her capacity as Chapter 7 Trustee ("Trustee") of the estate of 78-80 St Marks Place, LLC ("Debtor"). The Debtor's Chapter 7 bankruptcy case is pending in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") under case no. 21-12139 (MG).

4. The Property is encumbered by first priority liens belonging to St. Mark's Mixed Use LLC ("Lender"), including, without limitation, a mortgage ("Mortgage") held by the Lender. The Lender is represented by Katsky Korins LLP, 605 Third Avenue, New York, New York 10158. The Trustee and the Lender entered into a certain stipulation of settlement, which, among other things, allowed the Lender's secured claim ("Lender Stipulation").

5. The Sale is being conducted pursuant to an Order of the Bankruptcy Court dated March 29, 2023 ("Authorization Order") and sections 363 (b), (d), (f) and (m) of title 11 of the United States Code ("Bankruptcy Code").

6. In accordance with the Authorization Order and the Lender Stipulation, the Lender may credit bid for the Property at the Sale pursuant to section 363(k) of the Bankruptcy Code. The Lender: (a) shall in all events be deemed a qualified bidder at the Sale and be permitted to bid at the Sale; (b) shall not be required to pay a Qualifying Deposit (as defined below in ¶7) or any other Deposit (as defined below in ¶11) of any kind whatsoever, and (c) shall not be required to pay a Buyer's Premium (as defined below in ¶10).

7. To register for the Sale and bid on the Property, on or before 5:00 p.m. the day before the Sale each prospective bidder (other than the Lender) must deliver to the Trustee: (a) a certified or bank check payable to "Marianne T. O'Toole, Esq., as Trustee" in the amount of nine hundred and fifty thousand dollars ($950,000) ("Qualifying Deposit"), which amount shall serve as a good faith deposit against payment of the purchase price for the Property; and (b) these Terms and Conditions of Sale, executed by such prospective bidder. The Trustee reserves the right to reject any bidder (other than the Lender) who, in the sole discretion of the Trustee, the Trustee believes is not financially capable of consummating the purchase of the Property.

8. At the conclusion of the Sale, the first highest bidder ("Highest Bidder") and the second highest bidder ("Second Highest Bidder") for the Property must also execute, and thereby agree to be bound by, a Memorandum of Sale in the form annexed hereto.

9. At the conclusion of the Sale, the Trustee or her representative will return the Qualifying

Deposits to all bidders except the Highest Bidder and the Second Highest Bidder. The Second Highest Bidder's Qualifying Deposit will be returned within two business days after the Highest Bidder posts the entire Deposit (as defined below in ¶11).

10. In accordance with the Authorization Order, the Highest Bidder or, as applicable, the Second Highest Bidder (other than the Lender) shall be solely responsible to pay the Trustee's retained co-brokers, Maltz Auctions, Inc. and Cushman and Wakefield, U.S. Inc., four (4%) percent of the amount bid by the Highest Bidder or, as applicable, the Second Highest Bidder at the Sale (such percentage amount being the "Buyer's Premium"). The sum of the amount bid at the Sale and the Buyer's Premium is defined herein as the "Purchase Price".

11. Within 48 hours after conclusion of the Sale, the Highest Bidder (other than the Lender) shall deliver to the Trustee, by certified check, bank check, or wire transfer an amount equal to 10% of the Purchase Price minus the amount of the Qualifying Deposit, as and for a good faith deposit (such amount, plus the Qualifying Deposit, hereinafter "Deposit").

12. The Highest Bidder (other than the Lender) must pay the balance of the Purchase Price to the Trustee, by wire transfer at the closing of title to the Property ("Closing").

13. The Highest Bidder must close title to the Property on or before 5:00 p.m. on June 12, 2023 ("Closing Date"), TIME BEING OF THE ESSENCE as to the Highest Bidder, although such date may be extended solely by the Trustee. The Closing shall take place on or before the Closing Date at the offices of the attorneys for the Trustee, LaMonica Herbst & Maniscalco LLP, 3305 Jerusalem Avenue, Wantagh, New York 11793 or by mail, as elected by the Trustee.

14.     Real estate taxes, water and sewer charges will be apportioned as of 12:00 a.m. on the Closing Date. There will be no other apportionments pertaining to the Property.

15.     The Highest Bidder shall pay, on the Closing Date, any and all city, county, state or other transfer taxes incurred by or in connection with the transfer of the Property.

16.     In connection with the Closing and Closing Date, the Highest Bidder is hereby given notice that TIME IS OF THE ESSENCE against the Highest Bidder and the failure of the Highest Bidder to close for any reason whatsoever (except as otherwise provided below), including its failure to pay the balance of the Purchase Price on the Closing Date, will result in the Trustee retaining the Deposit and the termination of the Highest Bidder's right to acquire the Property under these Terms and Conditions of Sale. The Trustee's right to retain the monies paid including, without limitation, the Deposit, is not a penalty but rather liquidated damages and it is hereby agreed and acknowledged by the parties hereto that the amount of damages sustained by the Trustee are difficult to determine and the liquidated damages set forth herein are reasonable under the circumstances. The Highest Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Highest Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than the Trustee's inability to deliver insurable title to the Property. Further, the Highest Bidder shall have demonstrated, to the sole satisfaction of the Trustee, evidence of its ability to conclude the transaction upon these Terms and Conditions of Sale without delay. Expenses incurred by the Highest Bidder, or any competing bidder, including concerning any due diligence, such as obtaining title reports, shall be the sole

2



responsibility of such bidder and under no circumstances shall the Trustee, the estate or the Trustee's professionals be responsible for, or pay, such expenses

17     In the event that the Highest Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Trustee, at her sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice, without giving credit for any Deposit forfeited by the Highest Bidder, and upon such other terms and conditions as the Trustee deems appropriate in consultation with the Lender. Should the Second Highest Bidder fail to close on the Property within such time as the parties may agree but not to exceed 45 days after notice from the Trustee to the Second Highest Bidder, the Trustee shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice. In either event, the Second Highest Bidder or the next highest or best bidder shall be deemed to be "Highest Bidder" under these Terms and Conditions of Sale and shall be bound by these Terms and Conditions of Sale.

18.     The Trustee and her professionals, including the Trustee's retained co-brokers, Maltz Auctions, Inc. and Cushman and Wakefield, U.S. Inc., have not made, and do not make, any representations or warranties of any kind, including, but not limited to, as to the physical condition, expenses, operations, leases, rents, tenancies, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property that might be pertinent to the purchase of the Property, and including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Property; (b) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (d) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (e) the current or future use of the Property; (f) the present and future condition and operating state of any and all machinery or equipment on the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property on the Property; (h) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning subdivision or non-subdivision of the Property; or (j) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property. Each bidder hereby expressly agrees and acknowledges that no such representations or warranties have been made. The Trustee and her professionals, including the Trustee's retained co-brokers, Maltz Auctions, Inc. and Cushman and Wakefield, U.S. Inc., are not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Trustee unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by the Trustee

19.     The Property is being sold:



(a) "AS IS" "WHERE IS", "WITH ALL FAULTS," without any representations, covenants, guarantees or warranties of any kind or nature whatsoever.

(b) free and clear of any and all monetary interests of whatever kind or nature including, but not limited to, liens, claims, encumbrances, judgments and/or mortgages (collectively, "Interests"), with such Interests, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the entry of the Order for Relief against the Debtor; provided however if the Highest Bidder or, as applicable, the Second Highest Bidder and the Lender each agree in writing, each in their sole and absolute discretion, that the Property shall be sold subject to the Mortgage of the Lender, the agreement that the Property is sold subject to Mortgage shall be conclusively evidenced if the Lender, in its sole and absolute discretion, executes and delivers an assignment of the Mortgage to Highest Bidder (or a designee of the Highest Bidder) or, as applicable, the Second Highest Bidder (or a designee of the Second Highest Bidder) as assignee. For avoidance of doubt, notwithstanding this paragraph 19(b), the Highest Bidder or, as applicable, the Second Highest Bidder must pay the entire Purchase Price (less the Deposit paid) to the Trustee at the Closing;

(c) free and clear of the occupancies of Lawrence V. Otway, a/k/a Lawrence Lorcan Otway, a/k/a Lorcan Otway, Eugenie Otway a/k/a Eugenie Gilmore-Otway, a/k/a Eugenie Gilmore, Scheib's Place, Inc. d/b/a William Barnacle Tavern, Exhibition Of The American Gangster, Inc., and/or Theatre 80, LLC; and

(d) subject to, among other things:

(i) any other occupancies;

(ii) any state of facts that an accurate survey may show;

(iii) any state of facts a physical inspection may show;

(iv) any covenants, restrictions and easements of record;

(v) any building or zoning ordinances or other applicable municipal regulations and violations thereof;

(vi) environmental conditions; and

(vii) any and all non-monetary violations existing on the Property as of the Closing Date.

20. By delivering Qualifying Deposits, each bidder acknowledges that it has had the opportunity to review the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigation of the Property in making its bids.

4



Neither the Trustee nor any of her representatives, including the Trustee's retained co-brokers, Maltz Auctions, Inc. and Cushman and Wakefield, U.S. Inc., make any representations or warranties with respect to the permissible uses of the Property, including, but not limited to, the zoning of the Property. Each bidder acknowledges that it has conducted its own due diligence in connection with the Property and is not relying on any information provided by the Trustee and her professionals.

21.    The Trustee shall convey the Property by delivery of a Trustee's Deed. The quality of title shall be that which any reputable title insurance company authorized to do business in the State of New York is willing to approve and insure. The Trustee may at her option arrange for the issuance of a title insurance policy by such a company at the Highest Bidder's sole cost and expense.

22.    Any notices to the Highest Bidder, Second Highest Bidder or the Trustee hereunder shall be sufficient if sent by email to (i) counsel for such party; or (ii) to such party, and shall be deemed given on the date sent.

23.    Signatures delivered by electronic mail or facsimile shall have the same force and effect as original signatures.

24.    Except as may be authorized by an Order of the Bankruptcy Court, neither the Trustee nor the estate are liable or responsible for the payment of fees of any broker for any bidder including, but not limited to, the Highest Bidder.

25.    Nothing contained in these Terms and Conditions of Sale is intended to supersede or alter any provisions of the Lender Stipulation, the Bankruptcy Code or otherwise interfere with the jurisdiction of the Bankruptcy Court. The Lender and the Trustee shall retain all of their respective rights under the Lender Stipulation. Without limiting the foregoing: (a) if the Lender (or its designee) is the Highest Bidder or the Second Highest Bidder and takes title to the Property, the Lender's Mortgage on the Property shall not merge with any deed to the Property granted by the Trustee to the Lender (or its designee); and (b) following the Closing of Property sale to any person, the Lender shall have a deficiency claim under the Loan Documents (as defined in the Lender Stipulation) in the amount set forth in the Lender Stipulation. All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Trustee, after consultation with the Lender, provided that any such modification is not inconsistent with the Lender Stipulation, or by the Bankruptcy Court. The Trustee reserves the right to modify these Terms and Conditions of Sale at the Sale or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Bankruptcy Court.

26.    These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Property. By making a bid for the Property, each bidder will be deemed to have acknowledged having read these Terms and Conditions of Sale and agreed to be bound by them.

27.    If the Trustee is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever, her only obligation will be to refund the Deposit to the Highest Bidder and, upon such refund, the Highest Bidder shall not have any claim or recourse whatsoever against Property or the Trustee, the Debtor's estate, the Trustee's professionals, or the Lender.



28    The Trustee reserves her right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reason whatsoever, as she deems necessary or appropriate

29.    The Sale of the Property is subject to confirmation by the Trustee. Prior to the Closing, the Bankruptcy Court may enter an Order confirming the results of the Sale.

30.    Each bidder represents and warrants that it is capable of performing its obligations under these Terms and Conditions of Sale and has the financial wherewithal to perform its obligations under these Terms and Conditions of Sale.

31.    Except as disclosed below, each bidder represents and warrants that it has no connections to the Debtor, the Debtor's sole member (Lawrence Otway a/k/a Lorcan Otway), the Lender, the Trustee and/or the Trustee's professionals and that is has never been affiliated in any manner whatsoever, or held any interest in, the Debtor:

_____

_____

_____

32.    The Bankruptcy Court shall determine any disputes concerning the Sale of the Property. By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes.

I have read these Terms and Conditions of Sale and agree to be bound by them.

Dated:  _MAY 6_____, 2023

_MARK O'BRIEN_____
PRINT NAME

_[signature]_____
SIGNATURE

_____
TITLE (if entity)

Bidder contact information:

_110 St Marks Pl #17_
ADDRESS
_MARK@obTEAMNYC.com_
EMAIL
_917-485-4020_
TELEPHONE

Attorney name and contact information (if any):

_Andrew Luftig_
NAME
_Chaves Perlowitz Luftig LLP_
FIRM
_AL@CPLLawFirm.com_
EMAIL
_212-791-5993_
TELEPHONE

6